JOHN F. RATHBONE et al., Respondents, *v.* JACOB WIRTH, JR., et al., Appellants, Impleaded with JOHN F. DONOVAN et al.

1. APPOINTMENT OF MUNICIPAL OFFICERS — MINORITY OF COMMON COUNCIL — CONSTITUTION, ART. 10, § 2 — LAWS OF 1896, CHAP. 427. A minority of the common council of a city is not a city authority, within the meaning of the provision of the Constitution (Art. 10, § 2), that "all city, town and village officers, whose election or appointment is not provided for by this Constitution, shall be   *   *   *   appointed by such authorities thereof as the legislature shall designate for that purpose;" and hence the act for reorganizing the police department of the city of Albany (Laws of 1896, chap. 427) transcends the constitutional power of the legislature in that it provides that, for the purpose of a meeting of the common council to elect four persons as police commissioners, the members attending shall constitute a quorum; that each member of the common council shall be entitled to vote for not more than two of such persons, and that, if a vacancy shall occur in the board of police commissioners otherwise than by expiration of term, it shall be filled by appointment by the mayor upon the recommendation of a majority of the members of the common council belonging to the same political party or organization as the police commissioner whose office shall become vacant.

2. UNCONSTITUTIONAL RESTRICTION UPON APPOINTMENT TO OFFICE — INVALIDATION OF ENTIRE ACT BY INSEPARABLE UNCONSTITUTIONAL PROVISION. The clause in the act for reorganizing the police department of the city of Albany (Laws of 1896, chap. 427), that "no person is eligible to the office of police commissioner unless, at the time of his election, he is a member of the political party or organization having the highest or the next highest representation in the common council," is an unconstitutional restriction, and is such an essential part of the scheme of the act and so inseparably connected therewith as to render the entire act invalid.

*Rathbone* v. *Wirth*, 6 App. Div. 277, affirmed.

(Argued June 10, 1896; decided October 27, 1896.)

APPEAL from judgment of the Appellate Division of the Supreme Court in the third judicial department, entered June 2, 1896, which affirmed a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

This action was brought to obtain a judgment, which should perpetually restrain the common council of the city of Albany

150  459
151  500
150  459
j 152  383
150  459
153  362
150  459
155  277
150  459
e 163   41
150  459
170  ¹190
171  ¹ 88
150  459
173  ²114
173  ²116
e 173  ²118

from electing police commissioners in pursuance of the pro-
visions of chapter 427 of the Laws of 1896. The ground of
the action is the unconstitutionality of the act; which was
passed to amend chapter 77 of the Laws of 1870 and other
acts relating to the police department of that city. The first
section of the present act amends section three of the previous
act, so as to make it read as follows : "The police board of
the city of Albany shall consist of four police commissioners,
not more than two of whom shall belong to the same political
party or organization, and who shall be chosen and hold office
as hereinafter provided. On the first Monday after the
passage of this act, the common council shall meet at eight
o'clock in the evening in the common council chamber and shall
proceed to elect four persons, residents and freeholders in the
city, as such police commissioners, and for the purpose of such
meeting the members attending shall constitute a quorum.
Each member of the common council shall be entitled to vote
for not more than two of such persons, and the four persons
receiving the highest number of votes shall be such police com-
missioners. The common council shall not transact any other
business until the said four police commissioners are elected.
The commissioners so appointed shall hold office as such until
the first day of February, eighteen hundred and ninety-eight.
During the month of January, eighteen hundred and ninety-
eight, and in each and every second year thereafter, the com-
mon council shall meet and proceed in like manner to elect four
police commissioners, who shall hold office for two years from
the first day of February following. If a vacancy shall occur
in said board of police commissioners, otherwise than by expira-
tion of term, it shall be filled by appointment by the mayor
upon the written recommendation of a majority of the mem-
bers of the common council belonging to the same political
party or organization as the police commissioner whose office
shall become vacant. No person is eligible to the office of
police commissioner unless, at the time of his election, he is a
member of the political party or organization having the
highest or the next highest representation in the common

council. The commissioners shall receive no compensation for any services performed by them under the provisions of this act."

The Supreme Court, at Special Term and in the Appellate Division, has upheld the plaintiffs in their demand for an injunction and certain of the defendants have appealed to this court.

*Arthur L. Andrews* and *J. Newton Fiero* for appellants. The judiciary has no power or authority to substitute its views of the wisdom or policy of the statute for that of the legislature, and its functions are confined to the interpretation of the organic law as it stands, and they can consider only its actual provisions and the reasonable implications and intendments to be drawn therefrom. The rule is that the legislature possesses all the power not reserved by the Constitution. (Cooley on Const. Lim. [6th ed.] 204; *People* v. *Fisher,* 24 Wend. 215; *Cochran* v. *Van Surlay,* 20 Wend. 365; *Wynehamer* v. *People,* 13 N. Y. 430; *Bank of Chenango* v. *Brown,* 26 N. Y. 467; *People* v. *Cannon,* 139 N. Y. 32; *People ex rel.* v. *Flagg,* 46 N. Y. 401; *People ex rel.* v. *Briggs,* 50 N. Y. 553; *People* v. *Gillson,* 109 N. Y. 389; *People ex rel.* v. *Durston,* 119 N. Y. 569; *People ex rel.* v. *Rice,* 135 N. Y. 473; *People ex rel.* v. *Supervisors of W.,* 147 N. Y. 1.) This act is not in conflict with any fundamental principle of our government, or with the meaning and intent of the Constitution, either expressed or reasonably to be intended or implied. (Laws of 1892, chap. 686, § 19; Dillon on Mun. Corp. § 210.) The method provided for the appointment of police commissioners does not violate section 2 of article 10 of the Constitution, since it provides for their appointment by such authorities of the city as the legislature has designated for that purpose. (*People ex rel.* v. *McKinney,* 52 N. Y. 375; *People* v. *Raymond,* 37 N. Y. 428; 1 R. S. 139, § 8, subd. 2; Laws of 1892, chap. 171, § 15; *Purdy* v. *People,* 4 Hill, 384; Laws of 1867, chap. 187; *In re*

*Carboy,* 27 Hun, 82 ; *People ex rel.* v. *Bd. of Canvassers,* 129 N. Y. 366 ; *In re Wood,* 2 Cow. 30 ; *People ex rel.* v. *Crissey,* 91 N. Y. 616 ; Const. N. Y. art. 2, § 1 ; *People ex rel.* v. *Kenney,* 96 N. Y. 303 ; Laws of 1872, chap. 183 ; *People ex rel.* v. *Snedeker,* 14 N. Y. 52.) This act does not violate either section 1 of article 1 or section 1 of article 13 of the Constitution. It does not deprive any person of a privilege nor require any unlawful test as a qualification for office. (*People ex rel.* v. *Palen,* 74 Hun, 292 ; *People ex rel.* v. *Clute,* 50 N. Y. 451 ; *Davenport* v. *Mayor, etc.,* 67 N. Y. 456 ; *People* v. *Platt,* 117 N. Y. 159 ; *Rogers* v. *Common Council of Buffalo,* 123 N. Y. 173 ; *Barker* v. *People,* 20 Johns. 457, 471 ; *In re Wortman,* 22 Abb. [N. C.] 137 ; *People* v. *Hoffman,* 116 Ill. 587 ; *People ex rel.* v. *Wheeler,* 18 Hun, 540 ; *People ex rel.* v. *Hurlbut,* 24 Mich. 76.) The legislature having the power to create the office of police commissioner, and to provide that it should be appointive, has the right to limit the number from whom the selection should be made. (*People ex rel.* v. *Shepard,* 36 N. Y. 285 ; *People ex rel.* v. *Clute,* 50 N. Y. 459 ; Dillon on Mun. Corp. [3d ed.] §§ 37, 44 ; *People* v. *Morris,* 13 Wend. 325 ; *Billings* v. *Mayor, etc.,* 68 N. Y. 413 ; *Demarest* v. *Mayor, etc.,* 74 N. Y. 161.) The practical construction of the Constitution given by the legislature, and acquiesced in and acted upon by the executive and administrative departments of the government accords with the appellants' contention. (*People ex rel.* v. *Dayton,* 55 N. Y. 367, 377 ; *People* v. *Home Ins. Co.,* 92 id. 337 ; *People ex rel.* v. *Murray,* 149 N. Y. 367 ; Laws of 1874, chap. 314 ; Laws of 1881, chap. 99 ; Laws of 1882, chap. 353 ; Laws of 1885, chap. 54 ; Laws of 1885, chap. 26 ; Laws of 1887, chap. 63, § 5 ; Laws of 1887, chap. 214 ; Laws of 1888, chap. 214 ; Laws of 1890, chap. 58 ; Laws of 1894, chap. 302 ; Laws of 1894, chap. 615 ; Laws of 1895, chap. 180 ; Laws of 1895, chap. 339 ; Laws of 1895, chap. 394 ; Laws of 1895, chap. 445 ; Laws of 1895, chap. 565.) The objectional clauses are not essential or necessary to the plan and scope of the act and can be stricken from it as null

and void without in any way affecting the right of the common council to elect police commissioners. (*People* v. *Hurlburt*, 24 Mich. 112 ; *People ex rel.* v. *Porter*, 90 N. Y. 68 ; *Mayor, etc.*, v. *M. R. Co.*, 143 N. Y. 1 ; *Duryee* v. *Mayor, etc.*, 96 N. Y. 477 ; *People ex rel.* v. *Kenney*, 96 N. Y. 294 ; *Lawton* v. *Steele*, 119 N. Y. 226 ; *People ex rel.* v. *Kelly*, 76 N. Y. 489 ; *In re Vil. of Middletown*, 82 N. Y. 196; *People ex rel.* v. *Bull*, 46 N. Y. 69 ; *In re N. Y. & L. I. B. Co.* v. *Smith*, 148 N. Y. 540.) The provisions for the appointment of commissioners being valid, the other provisions contained in the statute to which objection is made are not for consideration in this action. (*In re Hathaway*, 71 N. Y. 238 ; *People* v. *Duane*, 121 N. Y. 375 ; *U. S.* v. *Germaine*, 99 U. S. 508 ; *People ex rel.* v. *Snedeker*, 14 N. Y. 59 ; *People ex rel.* v. *Civil Service Bds.*, 41 Hun, 287 ; *Smith* v. *Mayor, etc.*, 37 N. Y. 518, 520 ; *Long* v. *Mayor, etc.*, 81 N. Y. 425 ; *People ex rel.* v. *Whitlock*, 92 N. Y. 191 ; *People ex rel.* v. *Hagan*, 14 Misc. Rep. 48 ; Const. N. Y. art. 5, § 9.) The action is premature in that it cannot be assumed that the common council will violate the provisions of the Constitution in case the law is an unconstitutional one. (*People ex rel.* v. *Crissey*, 91 N. Y. 617 ; *People ex rel.* v. *Perley*, 80 N. Y. 624 ; *People ex rel.* v. *Kenney*, 96 N. Y. 303 ; *People* v. *Hurlburt*, 24 Mich. 94 ; *Hall* v. *People*, 90 N. Y. 498 ; *Boland* v. *People*, 90 N. Y. 678.) .

*E. Countryman, Matthew Hale* and *Albert C. Tennant* for respondents. The provisions of the amendatory act contravene the Constitution of the state, in so far as they render ineligible and disfranchise all citizens who are not " members of the political party or organization having the highest or the next highest representation in the common council." (Const. of N. Y. art. 1, § 1 ; 1 Story on Const. § 628 ; *Barker* v. *People*, 3 Cow. 686 ; *Brown* v. *Russell*, 43 N. E. Rep. 11 ; *Mayor, etc.*, v. *State*, 15 Md. 379 ; 19 Am. & Eng. Ency. of Law, 398, 399 ; *Louthan* v. *Comm.*, 79 Va. 196 ; Rawle on Const. [2d ed.] 164 ; *Atty.-Genl.* v. *Bd. of Councilmen*, 58 Mich. 213 ; *Evansville* v. *State*, 118 Ind. 426 ; 4 Black. Comm. 55–58 ;

*Taylor* v. *Porter*, 4 Hill, 140; *White* v. *White*, 5 Barb. 474; *People* v. *Toynbee*, 20 Barb. 168; *Wynehamer* v. *People*, 13 N. Y. 378; 2 Kent's Comm. 13; *East Kingston* v. *Towle*, 48 N. H. 57.) The statute in question is violative of section 2 of article 10 of. the State Constitution. (*People ex rel.* v. *Draper*, 15 N. Y. 532; *People ex rel.* v. *Potter*, 47 N. Y. 375; *People* v. *Rathbone*, 145 N. Y. 434; *People ex rel.* v. *Albertson*, 55 N. Y. 50; *People ex rel.* v. *McKinney*, 52 N. Y. 374; *People ex rel.* v. *Porter*, 90 N. Y. 68; *People* v. *Pinckney*, 32 N. Y. 377; *People ex rel.* v. *Metropolitan Police Board*, 19 N. Y. 188; *Devoy* v. *Mayor*, etc., 36 N. Y. 449.) Wherever the Constitution has unqualifiedly conferred the power of appointment to office upon any tribunal, body or authority, or has authorized the legislature to confer such power, without qualification, on any tribunal, body or authority, any attempt. by the legislature (1) to authorize the exercise of such power. by a part only of the members composing such tribunal, body or authority,. or (2) to control, limit, embarrass or trammel such tribunal, body or authority, in the exercise of such power, is unconstitutional and void. (*Warner* v. *People*, 2 Den. 272; 5 Edmonds' Stat. at Large, 298, §§ 9, 13; Laws of 1843, chap. 88; *People ex rel.* v. *McKinney*, 52 N. Y. 374; *Menges* v. *City of Albany*, 47 How. Pr. 244; 56 N. Y. 378; *People ex rel.* v. *Angle*, 109 N. Y. 564; *People ex rel.* v. *Denny*, 118 Ind. 449; *Clapper* v. *Ely*, 27 N. J. L. 622; *People* v. *Morrell*, 21 Wend. 563, 583; *Newell* v. *People*, 7 N. Y. 1, 109; *Gibson* v. *Ogden*, 9 Wheat. 188; *People* v. *Rathbone*, 145 N. Y. 434.) The provision in this statute appointing in a certain contingency the person who was senior captain on the 1st day of January, 1896, to the office of acting chief of police and giving him power to appoint or assign to duty the entire police force of the city of Albany is clearly unconstitutional and void. . (Laws of 1896, chap. 427, § 4; *Stuart* v. *Palmer*, 74 N. Y. 183; *Coxe* v. *Strait*, 144 N. Y. 396–408; *Gilman* v. *Tucker*, 128 N. Y. 190–200.; Throop's Public Officers, § 10; *People* v. *Rathbone*, 145 N. Y. 434; *Collins* v. *Mayor*, etc., 3

Hun, 680; *People ex rel.* v. *McKinney*, 52 N. Y. 374; *People ex rel.* v. *Draper*, 15 N. Y. 532; *Warner* v. *People*, 2 Den. 272; *State* v. *Hyde*, 22 N. E. Rep. 644; *In re Hathaway*, 71 N. Y. 238; *United States* v. *Germaine*, 99 U. S. 508.) The doctrine of practical construction of the constitutional provisions here in question has no application to this case and is unavailing to the appellants. (*People ex rel.* v. *Dayton*, 55 N. Y. 367, 377; *People* v. *H. Ins. Co.*, 92 N. Y. 337; *People ex rel.* v. *Murray*, 149 N. Y. 367; Laws of 1895, chap. 569, § 1; Laws of 1882, chap. 410, § 37; *Newell* v. *People*, 7 N. Y. 9; *People* v. *Rathbone*, 145 N. Y. 434.) The point that the action is premature, because it is not made sufficiently to appear that the common council and other authorities of the city have not threatened to take the action sought to be restrained, is entirely without force. (*Williams* v. *Boynton*, 147 N. Y. 426.) The main object of the statute in question being unconstitutional, and the other provisions being connected therewith, all parts of a single scheme, permeating the entire act, the whole fails, and it cannot be adjudged good in part and void in part. It must stand or fall together. (*People ex rel.* v. *Briggs*, 50 N. Y. 553; *People ex rel.* v. *Kenney*, 96 N. Y. 303; *In re N. Y. & L. I. B. Co.* v. *Smith*, 148 N. Y. 540; Cooley Const. Lim. [4th ed.] 215, 216; Sutherland Stat. Const. 231; *People ex rel.* v. *Porter*, 90 N. Y. 68; *Jones* v. *Jones*, 104 N. Y. 234; *Allen* v. *Louisiana*, 104 U. S. 80; *Poindexter* v. *Greenhow*, 114 U. S. 270; *Warren* v. *Mayor, etc.*, 2 Gray, 99; *Slauson* v. *Racine*, 13 Wis. 398; *State* v. *Commissioners*, 5 Ohio [N. S.], 507; *Commissioners* v. *Silvers*, 22 Ind. 491.)

GRAY, J. The learned justices, who, at the Special Term and in the Appellate Division, have expressed their views of the unconstitutionality of this act, have done so with such thoroughness as to leave but little to be added to this very important discussion. Mr. Justice PARKER, at Special Term, rested his determination of the question upon the ground that the act violates section 1 of article 1 and section 1 of article 13 of the State Constitution; the former of which declares

that "No member of this state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers;" and the second of which declares, that "No other oath, declaration, or test shall be required as a qualifica- tion for any office of public trust," than the oath, or affirma- tion, prescribed in the Constitution to be taken. Mr. Justice Herrick, in the Appellate Division, while expressing his assent to the views which Mr. Justice Parker has so well presented, has devoted the greater part of his opinion to pointing out the respects in which the act is in conflict with section 2 of article 10 of the Constitution of the state; which requires that, "All city, town and village officers, whose elec- tion or appointment is not provided for by this Constitution, shall be elected by the electors of such cities, towns and vil- lages, or by some division thereof, or be appointed by such authorities thereof, as the legislature shall designate for that purpose." In this view, the majority of the learned justices of the Appellate Division have been able to concur. The discussion of the question exhibits a critical examination of many authorities and its statement of the general principles which underlie our popular form of government and which recognize the existence of a right in the people of the various political subdivisons of the state to self-government, without hindrance from the state government as to the right of choosing or appointing local officers, should command our acquiescence. Without denying force to the objection that such legislation violates the spirit, if not the letter, of the con- stitutional inhibition against the requirement of any other test than is prescribed, I think the main and the insuperable objec- tion consists in the plain attempt to limit, or to control, the exercise of a power of appointment, which the Constitution has unqualifiedly conferred upon the local authority to be designated. If that be true, there is no occasion to consider other objectionable features; for the question then presented becomes one of surpassing importance to the citizens of the state. The constitutional provision, I repeat, is that "All city,

town and village officers, whose election or appointment is not provided for by this Constitution, shall   *   *   *   be appointed by such authorities thereof, as the legislature shall designate for that purpose." It is, of course, evident that the provision authorizes the legislature *to confer* the power of appointment upon any local authority; but that the power, which is to be thus conferred, may be qualified, or hampered in its exercise, by the legislature, is not only not evident, but such a proposition, in my opinion, threatens what we are bound to regard as a cardinal principle of our form of government. I refer to the right of local self-government; a right which inheres in a republican government and with reference to which our Constitution was framed. The habit of local self-government is something which we took over, or rather, continued from the English system of government and, as Judge COOLEY has remarked with reference to the Constitutions of the states, " if not expressly recognized, it is still to be understood that all these instruments are framed with its present existence and anticipated continuance in view." (Constitutional Limitations, *35.) The principle is one which it takes but little reflection to convince the mind of being fundamental in our governmental system and as contributing strength to the national life, in its educational and formative effect upon the citizen. It means that in the local, or political, subdivisions of the state, the people of the locality shall administer their own local affairs, to the extent that that right is not restricted by some constitutional provision. I do not think it can be seriously disputed that the conception of the state is free from the element that it belongs to it to control purely local affairs, and that state interference finds justification only when state policy, or local abuses, demand it. I think that no inference is warranted that other powers have been conferred by the people upon their legislative body than those which are mentioned in the Constitution, or which are necessary to carry into effect those which are expressly given.

In this clause of the Constitution under consideration, we find the express reservation of the right of local self-govern-

ment. The legislature is expressly authorized to designate the local authority, who shall appoint the local officers, and it is impliedly prohibited from doing more than that, or from placing limitations upon this power of appointment. As it was said in *People* v. *Draper* (15 N. Y. 544), " every positive direction contains an implication against anything contrary to it ; or which would frustrate, or disappoint, the purpose of that provision." When, therefore, we read in the act under consideration that " no person is eligible to the office of police commissioner unless, at the time of his election, he is a member of the political party or organization having the highest, or the next highest, representation in the common council," we must perceive a very clear violation of the Constitution. A right, which is an accompaniment of our political institutions ; which is expressly recognized as such by the Constitution, and the permanency of which is guaranteed therein, is deliberately trenched upon by the legislative body. What becomes of the right of the majority of the people in a locality to manage their own affairs and to appoint their local officers, when that majority can have no advantage in the constitution of the board by numbers, or when the choice is limited to the members of a designated class ? Is it not clear that the legislature has assumed to add to the power to designate the appointing authorities of the municipality the further power to designate the particular persons from whom the appointments must be made and, still further, to place the minority upon an equality with the majority ? This is too evident an excess of power to be explained away, or to be excused upon the ground of political expediency. It is not too much to say of it, that it is an attack upon one of those fundamental forms of personal liberty, against which the constitutional provision was intended to act as a safeguard. I think it to be as opposed to a safe state policy, as to the very letter of the Constitution.

It ought not to require much of argument to show the importance of this clause in our Constitution, or what its presence means for our political institutions. Its very pres-

ence in the Constitution of the state since 1846 evidences the
importance which the people attach to the preservation of this
right in the management of their local affairs.  It means the
right to choose their local officers, in all its reality; or it
means nothing.  If it does not mean that the people have
reserved the right of administering existing local offices by
officers of their own choosing, whether it be done, directly,
through an election, or, indirectly, through the method of an
appointment by some of their local authorities, I am at a loss
to understand its significance, or in what consists its peculiar
value.  This clause was inserted in the Constitution of 1846
and it has been, not infrequently, considered by this court.
In *People ex rel. Williamson* v. *McKinney*, (52 N. Y. 374),
the present chief judge of this court then said of it : " The obvi-
ous purpose of the provision of the Constitution which has been
quoted was to secure to the people of the cities, towns or vil-
lages of the state the right to have their local offices administered
by officers selected by themselves." Later, in *People ex rel.
Bolton* v. *Albertson*, (55 N. Y. 50), Judge ALLEN spoke to the
same effect and used the following language :  " Faithfully
observed, and effect given to it in its spirit as well as in its let-
ter, it effectually secures to each of the governmental divisions
of the state the right of choosing or appointing its own local offi-
cers, without let or hindrance from the state government, and
none can be deprived of the rights and franchises thus guaran-
teed to all.   The theory of the Constitution is, that the several
counties, cities, towns and villages are, of right, entitled to
choose whom they will have to rule over them ; and that this
right cannot be taken from them and the electors and inhabit-
ants disfranchised by any act of the legislature, or of any
or all the departments of the state government combined.
This right of self-government lies at the foundation of our
institutions, and cannot be disturbed or interfered with, even
in respect to the smallest of the divisions into which the state
is divided for governmental purposes, without weakening the
entire foundation ; and hence it is a right not only to be care-
fully guarded by every department of the government, but

every infraction or evasion of it to be promptly met and con-
demned; especially by the courts, when such acts become
the subject of judicial investigation." This is strong and
significant language. Read in its light, the provision of the
act under consideration appears as legislation, hostile to that
freedom of action which the people of Albany have the right
to claim, under the Constitution, in the management of their
own affairs. It cannot be denied that legislation of this
character has an inimical tendency and, unless the check of
the Constitution is strictly enforced by the courts, it may
develop a germ of menace to local self-government, to the
presence of which we should not suffer ourselves to be blinded
by any partisan considerations; or until it becomes too late
to extirpate it. I believe the principle to be too useful and
too healthful a part of our governmental system to be denied
its full effect and, while it is recognized in the fundamental
law of the state, the court should not be reluctant to enforce
it whenever a case fairly involving its efficacy is presented.
The judicial power was intended to stand as a bulwark
against all legislation which impairs any of the con-
stitutional guarantees. The legislative power of the state
is vested in the legislature and it is plenary with respect
to the state at large, or to any portion thereof, in mat-
ters of government, except as restricted by the Constitution.
But the people not only have not consented that the legisla-
tive power shall include the power to control their selection
of local officers; but, fearing to trust the discretion of the
legislature not to assume such a power, they have inserted in
their Constitution an express restriction. We must not forget
that a Constitution is the measure of the rights delegated by
the people to their governmental agents and not of the rights
of the people. It apportions the powers of government, with
such limitations as are appropriate to keep their exercise clearly
defined. The judicial power can, and should, pronounce null
all laws which contravene its provisions — a feature of our
governmental system which de Tocqueville declared to be
" one of the strongest barriers ever devised against the tyran-

nies of political assemblies." (Vol. 1, p. 129.) The remarks of Judge DENIO, in *People ex rel. Wood* v. *Draper* (15 N. Y. at p. 537), where section II of article X was under consideration, may be quoted in connection with our application of this section: "We must keep in mind that the Constitution was not framed for a people entering into a political society for the first time, but for a community already organized and furnished with legal and political institutions, adapted to all or nearly all the purposes of civil government; and that it was not intended to abolish these institutions, except so far as they were repugnant to the Constitution then framed."

Having in mind this principle of local self-government, as an inherited and pronounced feature in the general governmental system, let us turn to the statute in question and, more particularly, consider the provisions of the first section. What was it intended to do and what will it do, if allowed effect? What are its spirit and its purpose; for we must consider them in determining whether the legislative intent may be effectuated. It was passed as an amendatory act; affecting chapter 77 of the Laws of 1870 and the acts supplemental thereto, which related to the police department of the city of Albany. At the time of its passage the board of police commissioners consisted of five persons, viz.: of the mayor *ex-officio* and of four persons whom he might appoint. The present statute provided for a board of only four commissioners, "not more than two of whom shall belong to the same political party," who shall be chosen or elected at a prescribed meeting of the common council; and "for the purpose of such meeting the members attending shall constitute a quorum." Each member of the council is restricted in his vote to two persons and "no person is eligible to the office * * * unless, at the time of his election, he is a member of the political party or organization having the highest or the next highest representation in the common council." If a vacancy occur in the board, "it shall be filled by appointment by the mayor upon the written recommendation of a majority of the members of the common council belonging to

the same political party or organization as the police commissioner whose office shall become vacant." These provisions are very radical and peculiar in their character. Whereas under existing statutes the mayor was designated as the appointing authority, unfettered in his choice of men, and in the board, which would result, a majority could always act, the legislature by this act has undertaken to designate an appointing authority, whose appointees should only be taken from, and equally divided between, the two political parties dominant in the common council upon a certain date, and provision is made that that order of things should not be disturbed in the filling of any vacancy which might arise later. Then, again, instead of leaving the designated local authority to act in its regular, or chartered, way, provision is made for its action in ways unsanctioned by custom, or by other law than the act itself provides. The purpose of the act was to change the *personnel* of the board and taking the appointments from the executive power of the city, to place them with its legislative power, under such restrictions as to choice as to compose a body of four commissioners, equally divided among two sufficiently well-defined political organizations. The spirit of the legislative act is manifested by the attempt to secure the appointment of such a board, at the time fixed therein, by constituting an arbitrary quorum of the body out of any number of members attending. It may, also, be remarked, as illustrating the spirit of an act which provides for a board, whose action may be blocked by a division of the members, that in section four provision is made for the discharge upon a certain date of every member of the force from office, " with the exception of the person who was senior captain on January 1st, 1896," and in the event of a failure of the board to appoint a chief of police, " the said senior captain   *   *   *   shall act as such " and in case of its failure to appoint the captains and sergeants, " then it shall be the duty of the chief *or acting chief* to assign members of the force to perform such duties until the board shall make such appointments." Thus, " the person who was senior

captain on January 1st, 1896," is not only protected and kept
in office by this act; but, in the very possible contingency of
a tie in the board of commissioners blocking any action, he is
invested with extraordinary powers of control. I do not need
to comment upon the wisdom, or the prudence, of the legis-
lative act; for the court is not concerned with that. Its con-
cern ceases when it determines that the legislature has not
transcended the limits of its powers, as they are defined in the
Constitution of the state. If it has the right to interfere, to
the extent that the act proposes, with the local government
and concerns of the city of Albany, then we have only to
affirm the constitutionality of its proceeding. If it has
exceeded its legislative power, we are bound to say so and to
declare its act null, because unconstitutional.

That this statute violates the Constitution in its letter, as in
its spirit, seems to me an indisputable proposition. It goes
beyond the power to designate the local authority, who, under
the new system, shall appoint police commissioners. It desig-
nates the class of persons from whom the selection must be
made and excludes all others, and it precludes the majority in
the common council from naming the majority of the board.
Nor does it confine the designation of an authority to what
would be, in fact, such under the charter of the city of
Albany; for it attempts to create an appointing body in viola-
tion of the provisions of the city charter. At the time of the
adoption of the Constitution of 1894 the local authorities of
the city of Albany, under its charter, were the mayor, as the
executive power, and the common council, as the legislative
power. (Chap. 298, Laws of 1883.) The reference, therefore,
of the constitutional provision in question was to local author-
ities as they were constituted by force of existing public laws;
for the legal presumption must be that the revisers used those
words not only intelligently, but with knowledge of the forms
of municipal government and of the rules which guide execu-
tive and administrative action. The legislature was, con-
sequently, clearly restricted, in its designation of an appointing

60

authority, to what was a local authority within the meaning of the public laws and, in determining upon the common council, it could not go further and re-form, or re-constitute, its powers as a municipal agent, or authority, by this indirect method. Power was not vested in any one member of the common council, but in the aggregate of the members, who compose the body, and its action is the action of the body as a whole. (*U. S.* v. *Ballin*, 144 U. S. 1.) To act validly, the vote of a majority of the members was required; both at common law and under the charter. (*Ex parte Willcocks*, 7 Cowen, 402; chap. 298, Laws of 1883, tit. III.) One alderman, or member of the common council, or a group of members, or anything short of what is required by the charter to constitute a valid meeting of the board, would not be a local authority, competent to perform an act of municipal government. The legislative power is vested only in the common council, acting by a majority of the body. The minority was not empowered to bind the city and the legislature cannot give it that power. The provision, therefore, for a quorum, to consist of any number of attending members, is clearly in conflict with the Constitution. In passing upon the validity of an act, we are to consider what is possible and what may be done under its authority and the vice of the one before us is that it affects the common council's power to act, as designed, and created by law, to act; that is to say, through the majority of its members, and it authorizes, in a certain contingency, something less, or other, than that local authority to act. The legislature could not, constitutionally, deprive the municipal authority, selected for the purpose, of the power to exercise its functions as prescribed by the law of its being — an indisputable proposition with respect to a law, which purports not to amend a municipal charter, but to confer some new power upon a municipal authority.

We are not confronted here with any question of "minority representation." That is not the purpose of the act. It places the political minority in the legislative body upon an

*equality* with the political majority and in that feature con-
sists the violation of that fundamental principle of our popu-
lar form of government, which demands that the majority
shall govern. The principle of minority representation
recognizes the right in the majority to control. It must be
the majority who shall appoint the officers of government and
this extends more clearly to the governmental officers of locali-
ties, perhaps, than to the affairs of the state government.
Mr. Justice HERRICK refers to the only instance of the sur-
render by the people of the power of the majority to select
their officers, as being found in the constitutional provision
for the passage of a law securing equal representation among
the election officers of the two political parties, which, at the
next preceding general election, cast the highest and the next
highest number of votes, (Sec. 6, art. II), and he, appropriately,
observes that " the provision for such equal representation in
the one case, by implication, excludes it in all others." He
re-enforced his observation by a reference to the constitutional
debates; which resulted in the defeat of propositions author-
izing the legislature to provide for minority representation in
city governments.

I will refer to two cases, which are deemed to bear upon
the discussion of this case. In *Rogers* v. *Common Council
of Buffalo* (123 N. Y. 173), the law provided as to a board of
three civil service commissioners, there in question, that " not
more than two shall be adherents of the same political party."
It was held that " nothing in the law compelled the appoint-
ment of even one member of any political party; but that it
simply prevented the appointment of more than two from such
party." Commenting upon the case of the *Atty.-Genl.* v. *City
of Detroit* (58 Mich. 213), where the provision was for the
appointment of two election inspectors from each of the two
leading political parties, PECKHAM, J., said : " The law recog-
nized but two political parties, and made it necessary for the
appointments to be made from and confined to members of
those parties. An individual not a member of either was
not eligible to appointment. In the case before us there is

not a citizen in the state otherwise capable, who would not be eligible in the first instance to one of these appointments. * * * There is no provision making it necessary to appoint two from the same party, or making it necessary to appoint some one who has been known up to that time as a member of any particular party." Again he says : " The purpose of the statute * * * is not to arbitrarily exclude any citizen of the state, but to provide that there shall be more than one party or interest represented." The opinion in the *Rogers* case seems very strongly to support the view that the act, in question now, violates the Constitution.

The case of *People ex rel. Woods* v. *Crissey*, (91 N. Y. 616), cannot be deemed to confuse the present discussion. The act confined the vote of each alderman for police commissioners to one out of the two to be chosen, so that the minority would be sure to elect one. The common council had already acted upon the appointments and the court refused to pass upon the restriction in the act. FINCH, J., observed, in that connection, " if we assume this provision to be unconstitutional, it was a nullity. * * * They (the common council), are presumed to have known the law, and had an official legal adviser. * * * They must be held then to have voted without restraint." In the case at bar, however, the appointments remain to be made and the answers either admit that the defendants intend to comply with the provisions of the act ; or are silent as to the allegations of the complaint with respect to what is proposed to be done in obedience to the provisions of the act.

I perceive no force in the argument that there has been a practical construction of the Constitution, given by the legislature and acquiesced in and acted upon by the executive and administrative departments of the government. The question here is purely one of law: Is the constitutional provision referred to violated by this statute ? Is the passage of such a law authorized by the Constitution ? Practical construction of a law is usually accorded force, when it relates to the business conducted by the departments of the state government and when the legislation, depended upon to establish it, has

been clear and uniform in character, for a long period of years. But, to use Judge COOLEY's language, "acquiescence for no length of time can legalize a clear usurpation of power, where the people have plainly expressed their will in the Constitution and appointed judicial tribunals to enforce it." The question before us is not one of legislative policy in relation to the business of state government. It is whether the legislature has the power to interfere with the local concerns of a municipality and by arbitrary methods to prevent majority rule in the selection' of local officers. In the presence of the constitutional provision, is it not an assumption of a power, neither expressly granted, nor to be implied? The question is no less than this: Having a written Constitution, shall we, and may we, disregard one of its commands and, though the court is set as the people's bulwark against legislation which contravenes constitutional provisions, shall it aid the legislature when overstepping the limits assigned to its action? We cannot dispose of the question as one of legislative discretion; for, if we construe away such an express provision, upon however so plausible a theory, we open the door to future attacks upon the fundamental law, which underlies the structure of the state.

It is argued, however, that the objectionable clauses can be stricken out, as null and void, and that the statute may remain valid to the extent of conferring power on the common council to appoint police commissioners. I do not see how that may be done, within any correct or salutary application of a rule which is frequently resorted to, to uphold the acts of the legislative department of government. It is only applicable, where not only that which is vicious in the law is so distinct as to permit of being severed from the rest, but where, the severance being made, enough remains to effectuate the object which the legislature had in view. It will not do, to save legislative enactments from annulment, to strike out provisions which so clearly express the intention of the legislature as to characterize the purpose of the act and make their.presence essential to the existence of the statute. Judge

COOLEY in his work on Constitutional Limitations (\*p. 178), has so well expressed himself on this point that I will repeat his words: "If its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fail unless sufficient remains to effect the object without the aid of the invalid portion. And if they are so mutually connected with and dependent on each other, as conditions, considerations, or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect, the legislature would not pass the residue independently, then, if some parts are unconstitutional, all the provisions which are thus dependent, conditional, or connected, must fall with them." This case falls within the class of cases thus referred to. This is not a new scheme for the creation of a municipal body of police commissioners. This statute was intended to amend  the existing law upon the subject of a police commission and it is perfectly plain, upon its reading, that what was aimed at was to remove from office the present four commissioners and all of their subordinates, except "the person who was senior captain on January 1st, 1896," and to compel the substitution as commissioners of four persons, who would be representatives of two certain political organizations. If we eliminate the prescribed methods for the accomplishment of this purpose, we emasculate the legislative act and it cannot seriously be contended that, then, there would remain any such law as was intended to be enacted by the legislature. In the performance of the duty of endeavoring to uphold the validity of a legislative act, the court may not carve out from its provisions such as would make a law, to which the judicial approval might be given; unless the law then be such as can be deemed to have been within the contemplation of the legislature. In other words, the court is not to make a law for the people, but to uphold one which its representatives have enacted, and its duty, in that direction, where provisions are found which are antagonistic to any of the constitutional guarantees, is to see if by their excision the main object of

the enactment can be preserved.  If that object constitutes an evident interference with constitutional rights; if it can only be effectuated through unconstitutional provisions, then the court can do nothing and must pronounce its condemnation of the statute as a whole.  The recent case of *In re New York and Long Island Bridge Company* (148 N. Y. 540), furnishes an illustration.  There the act was in amendment of various acts, the original of which provided for a single scheme to construct a bridge over the East river.  The act, however, contained many provisions of an extraordinary nature, and foreign to that single purpose, which empowered the construction of indefinite extensions by way of approaches, connections with railroad companies and consolidations with other corporations.  It was held that these were void provisions and, under the rule, separable from those which were lawful and that what remained was capable of being executed as complete in itself. Here, however, one scheme runs through the act and towards its accomplishment provisions have been enacted, which are interdependent and without which the scheme falls.  The very language of the first section makes the birth of a new commission to depend upon a definite and prescribed action being taken and it is not reasonably conceivable that the legislature would ever have passed this statute, without its particular mechanism for the formation of a new police commission from the certain political materials allowed to be used.  I quote the language of the present chief judge, in *Lawton* v. *Steele* (119 N. Y. at p. 241): " Where the court can judicially see that the legislature only intended the statute to be enforced in its entirety, and that by rejecting part the general purpose of the statute would be defeated, the court, if compelled to defeat the main purpose of the statute, will not strive to save any part."  The main purpose of this statute was to bring about the appointment of a new police commission in such a way as that its body will be equally composed from two certain political elements dominant for the time in the common council.  We cannot assume that the legislature would have passed this act except as a whole and, therefore,

it is our duty, for the reasons assigned, to declare it to be unconstitutional and void.

The judgment appealed from should be affirmed, with costs.

O'BRIEN, J. This action was brought by the plaintiffs, who are residents and taxpayers of the city of Albany, to enjoin the common council of that city from proceeding to execute and carry out a statute, passed during the last session of the legislature, which, in effect, removes the present police force from office and provides for the organization of a new one. The act is chapter 427 of the Laws of 1896, and by its title and provisions amends chapter 77 of the Laws of 1870, and also amends or repeals various other statutes relating to the municipal government of that city and to the organization and government of the police force therein. It is alleged in the complaint that this act is in conflict with the Constitution of the state, and, therefore, void, and that proceedings on the part of the common council in execution of its various provisions would be illegal official acts, within the meaning of the statute, which should be enjoined by the courts.

On a trial of the issues at Special Term the action was sustained, and the judgment there pronounced has been affirmed by the Appellate Division of the same court. The controversy involves important principles concerning the right of local self-government in cities and the individual and political rights of the citizen. These questions always open a very wide field of discussion, the materials for which are to be found in abundance in historical and judicial records. The provisions of our Constitution on these subjects, which it is claimed have been violated in the passage of this act, are, as is well known, but the expression, in brief and comprehensive language, of general principles, of remote origin, the development and recognition of which required centuries of discussion and civil strife before they were adopted here as the fundamental law. Hence, when questions arise for determination concerning their true meaning and interpretation, the nature of the case

permits a very wide range of discussion based upon historical facts by means of which principles are traced to their source and origin, and their progress and application marked, from time to time, until finally embodied, as they have been, in our written Constitution.

The particular questions presented by this appeal have been illustrated, both at the bar and in the opinion of the court below, by ample materials drawn from this source. We can add little of any value to what has been said upon this feature of the argument in the decision now under review, and we can safely and properly leave that branch of the discussion where it was placed by the learned judge who spoke for the majority in the court below. Assuming, without further argument, that the leading and fundamental principles there stated with respect to individual rights and local self-government are correct — and there is very little if any dispute in this respect between counsel — it remains to apply them to the provisions of this bill. What has been frequently called the political tendency of the Constitution is not always to be found expressed in words, but is to be derived from acknowledged principles of government that existed long before its adoption and are to be implied from the general language and evident purpose and scope of particular provisions.

The principal objections to the bill are founded upon the provisions of the first section, which amends section three of the act of 1870, and reads as follows:

" § 3. The police board of the city of Albany shall consist of four police commissioners, not more than two of whom shall belong to the same political party or organization, and who shall be chosen and hold office as hereinafter provided. On the first Monday after the passage of this act, the common council shall meet at eight o'clock in the evening in the common council chamber and shall proceed to elect four persons, residents and freeholders in the city as such police commissioners, and for the purpose of such meeting the members attending shall constitute a quorum. Each member of the common council shall be entitled to vote for not more than

two of such persons, and the four persons receiving the
highest number of votes shall be such police commissioners.
The common council shall not transact any other business
until the said four police commissioners are elected. The
commissioners so appointed shall hold office as such until the
first day of February, eighteen hundred and ninety-eight.
During the month of January, eighteen hundred and ninety-
eight, and in each and every second year thereafter, the com-
mon council shall meet and proceed in like manner to elect
four police commissioners, who shall hold office for two years
from the first day of February following. If a vacancy shall
occur in said board of police commissioners otherwise than by
expiration of term, it shall be filled by appointment by the
mayor upon the written recommendation of a majority of the
members of the common council belonging to the same politi-
cal party or organization as the police commissioner whose
office shall become vacant. No person is eligible to the office
of police commissioner unless at the time of his election he is
a member of the political party or organization having the
highest or the next highest representation in the common
council."

There are some other provisions of the act which will be
referred to hereafter, but this section is the basis of nearly all
the constitutional objections which have been urged against
the bill. At the date of its passage, on the 30th of April,
1896, and at the time of the adoption of the present Consti-
tution, and for a long time before, the common council was
the regularly organized legislative and governing body of the
city, composed of nineteen aldermen, elected from the
different wards by the electors. There was then, and had been
for many years, a board of police commissioners, composed
of the mayor and four citizens, nominated by him and con-
firmed by the common council, and upon this board the
government of the police force devolved. It is clear that it
was the purpose of the act in question to abolish this board
and to substitute another in its place and, as will be seen here-
after, to disband the whole police force and to create a new

one. We are not concerned so much with the justice or wisdom of this legislation as we are with the methods through which it was to be carried into execution.

The purpose of the legislature was to be attained through a board of police commissioners to be created under the act and composed of two members from each of the political parties having the highest and the next highest representation in the common council, and the last clause of the section declares in terms that no citizen outside these two political organizations is eligible to the office.

The first objection urged against the validity of the act is that it violates section one of article one of the Constitution, which declares that "no member of this state shall be disfranchised, or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land, or the judgment of his peers," and also section one of article thirteen, prescribing the oath to be taken by all officers, and providing that "no other oath, declaration or test shall be required as a qualification for any office of public trust."

At the expiration of the term of office of the commissioners created by the act, their places are to be filled by the same process and, in case of a temporary vacancy, it must be filled by the mayor, upon the written recommendation of a majority of the common council belonging to the same political party or organization as the police commissioner whose office shall become vacant. It is plain that the legislature has taken every possible precaution to exclude for all time to come any person from holding the office, either for a full term or to fill a temporary vacancy, who is not a member of one of the political parties designated in the act.

When the validity of such legislation is brought in question it is not necessary to show that it falls appropriately within some express written prohibition contained in the Constitution. The implied restraints of the Constitution upon legislative power may be as effectual for its condemnation as the written words, and such restraints may be found either in the language employed, or in the evident purpose which

was in view and the circumstances and historical events which led to the enactment of the particular provision as a part of the organic law. A written Constitution must be interpreted as the paramount law of the land according to its spirit and the intent of its framers, as indicated by its terms. In this sense it is just as obligatory upon the legislature as upon other departments of the government or upon individual citizens. (*People ex rel. Bolton* v. *Albertson*, 55 N. Y. 50.)

When the two sections of the Constitution above referred to are read together and all are read in the light of the historical events and notorious abuses of power which led to their insertion in the Constitution it cannot, I think, be doubted that they are broad enough in their terms and that they were in fact intended to prevent the enactment of laws proscribing any class of citizens as ineligible to hold office by reason of political opinions or party affiliations. The section of the Constitution last cited comprehends more than a mere prohibition of test oaths, such as are familiar to the student of English history. It deprives the legislature not only of all power to exact any other oath, but also any other *declaration or test* as a qualification for office. That the statute under consideration does prescribe a political test as a qualification and makes party adhesion a condition of holding office cannot well be denied. It not only, in effect, requires the four commissioners to be divided equally between the two political parties, but in terms brands every other citizen, except those who are members of the two parties, as ineligible to hold the office. The courts of this state have not passed upon the validity of a statute containing a disqualifying clause like the one in question, but principles have been established which plainly lead to the conclusion that such enactments are destructive of local self-government and individual rights. That is plainly the result of the discussion in the case of *Barker* v. *People* (3 Cowen, 686), in which the principles embodied in these clauses of the Constitution were stated and explained.

In other states with constitutional restrictions identical cal in scope and purpose statutes containing similar provisions

to these now under consideration were held to be void or inoperative. In the case of the *Mayor of Baltimore* v. *State* (15 Md. 379) the court had under consideration a provision of the city charter relating to the police board which provided " that no black Republican or endorser or supporter of the Helper Book shall be appointed to any office under such board." The reasoning of the court in that case sustains the conclusion that the judicial department will not give effect to such disqualifications when interposed by the legislature against the right of any citizen to hold office if conferred upon him by the appointing power. The Supreme Court of Michigan held that a statute providing that the members of a board should be selected in equal numbers from the two political parties represented in the common council was in conflict with a similar provision of the Constitution of that state in that it disqualified all other citizens from holding the office and prescribed party adhesion or attachment to certain political opinions as a test for holding office in addition to the constitutional oath. (*People ex rel.* v. *Hurlbut*, 24 Mich. 44; *Atty.-Gen.* v. *Board, etc., of Detroit*, 58 Mich. 213.) The same result was declared by the Supreme Court of Indiana when considering a statute which required positions in the police and fire departments in cities to be filled by selection from the two leading political parties in these cities. (*Evansville* v. *State*, 118 Ind. 426.) The vice which the courts found in all these statutes was that they prescribed a test based upon political opinions for appointees to office and disqualified all whose political views did not conform to such test.

In these cases it was fairly shown that legislation of this character is in conflict with the letter and spirit of the constitutional provisions referred to and with the fundamental principles of free government. They can be safely followed in disposing of the same features in this case.

The legislature of this state has no power to enact a law which proscribes any class of citizens as ineligible to hold public office on account of political belief or party affiliations, and, consequently, the last clause of the section of the bill in ques-

tion violates the provisions of the Constitution referred to and is void.

The learned counsel for the defense contend that this provision, if held to be invalid, may be eliminated from the act and the remainder permitted to stand; but when that provision is exscinded nothing would remain in the bill to require the appointment of adherents of either of the parties named. There would, indeed, be a prohibition against appointing more than two persons from any political party, but nothing whatever to require the appointees to belong to any party. The common council would then be at liberty to make the selections from that class of independent citizens who were not adherents of any party. This, however, would defeat one of the main purposes of the bill. When the several provisions are carefully read together, it is quite manifest that it was the intention to divide the power of the police department and the police force itself equally between the two political parties designated, and the exclusion of all other persons as ineligible to be members of the board was a necessary means to the accomplishment of that end. The principle of a division of the board and the whole police force equally between the two parties is so firmly imbedded in the act, and so inseparably connected with all of its provisions, that it cannot be omitted without frustrating the fundamental purpose which was in view. When the statute is so reduced as to permit the common council to constitute the board from independent citizens, not members of either party, it would not only fail to embody the main purpose of its enactment, but it could not reasonably be asserted that the legislature would have passed it at all in that form. The purpose of the legislature to constitute a board of police commisioners and a police force equally divided between two political parties, is so closely interwoven with all the provisions of the bill, that the disqualifying words at the close of the first section cannot be eliminated without essentially changing the scope and operation of the law and reducing it to a form in which it could not be said that it would have been originally passed. But the essential and

operative provisions of this statute are open to still other con-
stitutional objections which will now be considered without
reference to the clause referred to. If these objections are
valid, as we think they are, then, obviously, there would
remain no basis whatever for the contention that any mate-
rial part of the act could be saved.

It is admitted that police commissioners are city officers
within the meaning of article ten, section two, of the Constitu-
tion, which reads as follows: "All city, town and village
officers whose election or appointment is not provided for by
this Constitution, shall be elected by the electors of such cities,
towns and villages, or of some division thereof, or appointed
by such authorities thereof, as the legislature shall designate
for that purpose." The true interpretation, scope and mean-
ing of this section of the Constitution has been frequently
passed upon by this court, and it has been uniformly held
that its obvious purpose was to secure to the people of the
cities, towns and villages of the state the right to have the
local offices administered by officers selected by themselves.
It was designed to protect and give force and effect to the
principle of local self-government which has always been
regarded as fundamental in our political institutions, and to
be the very essence of every republican form of government.
The local government, even in the smallest division of the
state, is the preparatory school in which the citizen acquires
the rudiments of self-government, and hence these institutions
have been justly regarded as the nurseries of civil liberty.
(*People ex rel.* v. *McKinney,* 52 N. Y. 374; *People ex rel. Bol-
ton* v. *Albertson,* 55 N. Y. 50; *People ex rel.* v. *Porter,* 90 N. Y.
68; *People ex rel.* v. *Crooks,* 53 N. Y. 648; *People ex rel.* v.
*Bull,* 46 N. Y. 57; *People ex rel.* v. *Foley,* 148 N. Y. 682.)

In the case of *People ex rel. Bolton* v. *Albertson* (*supra*), the
meaning of this provision of the Constitution was stated in the
following comprehensive language: "The purpose and object
of section 2 of article 10 of the Constitution, as is very obvious,
was to secure to the several recognized civil and political
divisions of the state the right of local self-government, by

requiring that all county, city, town and village officers, whose election or appointment was not provided for by the Constitution, save those whose offices might thereafter be created by law, should be elected by the electors of the respective municipalities, or appointed by such authorities thereof as the legislature should designate. As to offices known and in existence at the time of the adoption of the Constitution, this provision is absolute in its prohibition of an appointment by the central government or its authority, or by any body other than the local electors, or some local authority designated by law. Faithfully observed, and effect given to it in its spirit as well as in its letter, it effectually secures to each of the governmental divisions of the state the right of choosing or appointing its own local officers, without let or hindrance from the state government, and none can be deprived of the rights and franchises thus guaranteed to all. The theory of the Constitution is, that the several counties, cities, towns and villages are, of right, entitled to choose whom they will have to rule over them ; and that this right cannot be taken from them and the electors and inhabitants disfranchised by any act of the legislature, or of any or all the departments of the state government combined.

This right of self-government lies at the foundation of our institutions, and cannot be disturbed or interfered with, even in respect to the smallest of the divisions into which the state is divided for governmental purposes, without weakening the entire foundation ; and hence it is a right not only to be carefully guarded by every department of the government, but every infraction or evasion of it to be promptly met and condemned ; especially by the courts, when such acts become the subject of judicial investigation."

There can be no doubt that this provision of the Constitution secured to the people of the city of Albany the right of choosing or appointing their own local officers without let or hindrance from the state government. The only power that the legislature had with reference to a board of police commissioners in that city, was to provide either for their election by

the electors, or their appointment by such agencies or authority
as the people had selected to administer their local affairs.
If the statute now before us, either in form or substance,
violates these principles, it cannot and ought not to be upheld.
It is conceded that the legislature had no power to appoint the
police commissioners, and what it cannot do directly it cannot
do indirectly.  It cannot extend the term of office of a local
officer who has been already elected, for the plain reason that
for the extended period of time it is virtually an appointment.
A constitutional provision cannot be evaded under color of
exercising some other general power which the legislature may
possess.  In the case at bar the common council was designa-
ted as the authority to make the appointment of police com-
missioners, and so far the legislature acted within its powers.
But in making the designation it had no power to so bind and
restrict its action as to make that body a mere instrument of
its own will.  The right of the people to select their local
officers cannot be evaded or disregarded by conferring the
power of appointment upon some agency of their own selec-
tion, coupled with such conditions and restrictions as to make
the choice virtually that of the legislature and not of the
people.  It needs no argument to show that the Constitution
may, in that way, be as effectually violated as if the officers
to be appointed had been named in the bill, and therein lies
the vicious principle which, as it seems to me, pervades the
act in question.

The common council of a city, like every other legislative
body composed of individual members, acts in its official
capacity as a unit through the vote of the majority.  While
the power to elect or appoint the four police commissioners
under the act in question is nominally conferred upon this body
or authority, yet the members are, in terms, prohibited from
voting for more than two.  There is nothing in the bill to
prevent the whole body from voting for the first two candi-
dates presented, but, having so voted, their powers are
exhausted, and acting in the ordinary way only two members
of the board could be elected.  But the bill was evidently

62

framed with reference to a known political situation and for the purpose of producing a particular result. It was known that the members of the common council were divided between the two political parties, a majority belonging to one and a minority to the other. How overwhelming in point of numbers the majority may have been or how insignificant the minority, we cannot know from the record, nor are we concerned with that question. What is more important is the fact, which plainly appears upon the face of the bill, that the minority, however feeble in point of numbers, are given the power to elect half the commissioners while the majority are given the right to elect the other half, and this division and distribution of power is carefully perpetuated for all future time by other provisions of the bill. Of course, if such a system can be introduced into all the cities, towns and villages of the state, local self-government must disappear and government by the majority in the legislature will be substituted in its place. It would be difficult to suggest a contrivance better calculated to undermine and destroy the spirit of civic freedom than a statute, enacted by the central authority, conferring powers upon a minority equal to those which can be exercised by the majority.

The question is whether the legislature, while professing to confer power upon the common council to appoint four persons to compose a board of police commissioners, can at the same time and in the same breath empower a minority of the body, whether it be composed of one person or more, to appoint half of them. It would seem to be clear that any attempt on the part of the legislature to divide the appointing power into groups or fragments, each acting independent of the other in such a way as to enable a minority to exercise the same power as the majority, and thus, indirectly, to bring about the same result as the legislature itself would desire if it could act directly, is a violation of the spirit and purpose if not the letter of the Constitution. The two commissioners who under the scheme of this statute are to be elected by a mere minority fragment of the common council would hold their

offices, not from the people of the city, but from the legislature. In every substantial sense such officers, thus selected, must be regarded as the creation of the central power of the state rather than the choice of the people, acting directly or through their chosen agencies. If the legislature can lawfully authorize a minority of the common council to appoint one-half the police board, there is no reason why it cannot authorize a tax to be imposed, an ordinance enacted or any other legislative or administrative act to be performed by the same vote. The fallacy of all the reasoning in support of the measure is to be found in the assumption that a single member of the common council, or a minority of the body, is a local city authority within the intent and meaning of the Constitution. When the common council of a city is designated as the appointing power the term is to be understood in its usual ordinary and popular sense, and the authority is to be exercised in the ordinary manner, according to the procedure governing legislative or deliberative bodies. When it is so fettered and cramped in its official action, and its power so divided that the vote of a single member in the minority is made as potential as that of a dozen in the majority, it then ceases to be the common council, or the local authority, in any just or practical sense, and becomes a mere instrument to register the legislative will.

The fatal objection to the bill is that, while professing to comply with the Constitution by designating the common council as the appointing authority, it violates it by restrictions upon its action and by the enactment of methods of procedure for a special purpose which, in their practical operation, confers the power to select upon two political groups in the body, each acting independently of the other. The unity and efficiency of the common council as a deliberative body, representing the people, and as an organ of city authority, is thus destroyed by the distribution of its legitimate powers between two unequal groups or fragments of the whole body. City officers selected in this manner are in no just or proper sense either chosen by the people or appointed by the common

council, or any other local authority, and nothing less than this will satisfy the letter or the spirit of the Constitution.

The act should not be viewed as an expedient for a day, but a permanent law for all time, and, thus considered, it is obvious that the powers conferred upon the minority may be exercised by a single member. Such a situation is, of course, possible and quite conceivable. To say that the two commissioners, elected under such circumstances, held office and exercised the important powers conferred by the bill, either by the choice of the electors, the common council, or any other city authority, would be to state a proposition so glaringly erroneous as to merit no consideration whatever. Their appointment under such circumstances would manifestly be due to the fact that, by a legislative edict, all the other members of the common council were prohibited from participation in the choice. It would be quite as competent under such conditions for the legislature to omit mere formalities, without substance, and to name the commissioners in the bill. The principle is the same whether the minority consists of one member or more. When the common council is designated as the appointing authority, but the majority of the members are disqualified and debarred from voting and the minority empowered to make the choice, the official organ of the popular will is silenced and, though the real nature of the procedure may be disguised by the observance of forms, yet the appointment in such a case is, in substance, the act of the central and not the local authority, and so the Constitution is violated. (*Menges* v. *City of Albany*, 56 N. Y. 374; *Warner* v. *People*, 2 Denio, 272; *People ex rel.* v. *Angle*, 109 N. Y. 564; *State ex rel. Holt* v. *Denny, Mayor, etc.*, 118 Ind. 449; *Clapp* v. *Ely*, 27 N. J. Law, 622.)

This objection affects the most important section of the bill, without which the other provisions can have no practical operation. In this section the principal purpose of the legislature is embodied and declared, and when eliminated the whole act must fail.

If the views here stated are correct they are sufficient to

dispose of the appeal. But it may not be improper to notice some other sections of the bill containing important provisions which seem to be equally objectionable in the light of the constitutional enactment last referred to.

Having attempted to create a board, composed equally of members of two political parties, a disagreement or deadlock is anticipated and provided for. In the fourth section power is conferred upon the board to organize an entirely new police force and to appoint a chief of police. It is true that it may in its discretion retain and continue in office members of the present force, but such continuance must be manifested by an affirmative resolution duly passed, which, of course, requires the vote of a majority of the board, and unless the two parties in the board can agree to pass such a resolution, the present force shall cease to exist on the first day of August, 1896. To this sweeping provision, however, a single exception is made in favor of the person who was senior captain on the first day of January, 1896, who, for some reason, is retained by force of the act itself. The section then provides that in case of a failure of the board to agree upon the appointment of a chief of police, this person who was such senior captain at that time shall act as and perform all the duties and possess all the powers and receive the salary of the chief of police until the board shall agree upon an appointment. In case the board cannot agree upon the appointment of the various members of the police force who are designated in the act as captains or sergeants, it is made the duty of the person so acting as chief to assign members of the police force to perform such duties until the board shall agree upon appointments.

But since the present force is disbanded on August first, 1896, with the exception of such members as the board can agree to retain by resolution of the majority, and as there may be no police force in existence after that date, the authority to assign persons to police duty is in substance an authority to organize and create a new police force. Thus it appears that the legislature, having attempted to create a board of police commissioners which is tied politically, has also designated a

certain police captain, in a certain contingency quite likely to happen, to be chief of police, with all the duties, powers and emoluments of that office, and, upon a like contingency, he becomes vested with all the powers that the board itself could exercise with respect to the organization and government of the police force of the city. In this way the senior captain is made a new officer, not by appointment of any city authority, but by the direct action of the legislature. The constitutional validity of a law of this character must be determined by the nature, character and scope of the powers attempted to be conferred, whether actually exercised or not. (*Stuart* v. *Palmer*, 74 N. Y. 183; *Coxe* v. *State*, 144 N. Y. 396; *Gilman* v. *Tucker*, 128 N. Y. 190.)

The appointment by the legislature of city officers in whatever form, or under whatever guise it may be attempted, is a clear invasion of the right of local self-government secured by the Constitution. The very extensive powers conferred by the fourth section upon a designated individual, who was captain at a certain date, is in substance and effect an appointment by the legislature of this person to discharge the new duties prescribed therein. It cannot be contended that the legislature has power to appoint a chief of police or to authorize a designated person to organize and govern the police force in a city, but the act in question confers such powers, and provides for such an emergency. The powers thus attempted to be conferred indicate quite plainly the general scope and purpose of the bill and enable us to measure the results in case the intention of the law is carried out. The two members of the commission selected by the minority of the common council, whether that minority consists of one member or more, are empowered to disband the whole police force of an important and populous city, the capital of the state. They may do that without any regard to the wishes of the people of the city who pay the taxes, and for whose safety and protection a police force is maintained. It can be accomplished without even any affirmative action on their part. They may remain passive and refuse to vote for

the resolution retaining the force or any part of it, and then the statute does the rest, since, in the absence of some affirmative action on the part of the board, on or before the first day of August, 1896, the present organization is completely swept away by force of the statute itself. All this may be done with or without cause, and without charges, trial or investigation of any kind whatever. Moreover, a single man selected by the legislature may organize a new police force, since there is no one else with power to do it in case the two political elements in the board, equally divided, fail to agree.

It seems to me impossible to reconcile a bill so framed and involving such possibilities with the principles of local self-government so plainly expressed in the Constitution.

The last clause of this section requires the board to appoint the requisite number of patrolmen within ten days from August 1, 1896, from the civil service list, and provides that no person shall be eligible who is over the age of forty years.

It is urged that this restriction is in violation of article five, section nine, of the Constitution, which requires appointments and promotions in the civil service of the state and in cities to be made according to merit and fitness, to be ascertained, so far as practicable, by competitive examinations. In a statute which authorizes the discharge of the whole police force of a large city this disqualification, based upon age, is quite significant. The discharged members of the present force might be able to satisfy all the requirements of the civil service regulations as to merit and fitness so completely as to be placed at the head of the list, but none of them could be appointed if over forty years of age. While the legislature has the power to prescribe a qualification based upon age as a condition of admission to the civil service, and particularly to the police force in a city, yet, since the Constitution has made merit and fitness the primary and controlling test, it is obvious that the spirit and purpose of the fundamental law cannot be defeated or evaded by statutory conditions or restrictions, merely arbitrary, or plainly unreasonable. The decision of the legislature that the constitutional test of merit and fitness

is not practicable in a particular case, or that still other conditions or qualifications should be attached to the right of appointment, is not conclusive, but is open to the scrutiny of the courts. (*In re Keymer*, 148 N. Y. 219; *In re Jacobs*, 98 N. Y. 98.)

Whether the age qualification required by this statute is, under the circumstances, a justifiable exercise of power or an arbitrary and unreasonable condition, presents a question which, in view of the preceding discussion, it is not now necessary to decide.

The learned counsel for the defendants has attempted, with much industry and ability, to defend the various provisions of this bill by arguments drawn largely from the legislative interpretation of the Constitution manifested by the creation and operation through a long series of years of bi-partisan boards and commissions, and our attention is called to numerous laws enacted for that purpose, providing sometimes for their appointment and sometimes for their election by the people. None of these statutes, however, contain such provisions as the one now under consideration, and, it should be added, this court has carefully refrained from expressing any opinion as to the validity of provisions which preclude the people or the appointing power from voting for or approving of all the members composing them. (*People ex rel.* v. *Kenney*, 96 N. Y. 303; *People ex rel.* v. *Crissey*, 91 N. Y. 616; *Demarest* v. *Mayor, etc.*, 147 N. Y. 203.) It will be found, I think, upon careful examination of the laws creating such boards, that they have been organized with such scrupulous fairness that in every case they can reasonably be considered as the result and outgrowth of local sentiment and local authority. Moreover, they have proved to be, as thus constituted, such useful instruments for the promotion of economy, order and good government as to disarm all opposition on the part of the people in the localities where they are in operation, and to meet with general public approval.

We do not decide or intimate anything against the validity of the laws under which such boards exist. When their par-

ticular provisions are questioned or brought regularly before us it will then be pertinent to inquire whether there is not sufficient warrant within the pale of the Constitution for their organization and existence. The construction placed by the legislature upon limitations on its powers expressed in the Constitution, while entitled to respectful consideration, can never, of course, be conclusive. The interpretation of the Constitution is confided to the judicial and not the legislative department. But the argument in this case in favor of legislative construction loses much of its force by the circumstance that the recent convention to revise the Constitution framed and inserted in that instrument an entirely new provision for constituting election boards on the bi-partisan plan. If the argument now made is sound, this provision was unnecessary. But it can scarcely be supposed that such an able and intelligent body, embracing as it did many of the most eminent members of the bar, introduced, debated and passed an entirely new provision intended to confer upon the legislature a power which it already possessed.

It does not follow, however, that laws which merely require the local appointing power to so constitute boards as to be nonpartisan or bi-partisan are in conflict with the Constitution. So long as the people have the benefit of the judgment and discretion of the local authority in making the selection from the citizens it may not be a fatal objection that they are restricted from selecting all the appointees from the same party. So long as the appointment is in fact, as well as in form, made by the mayor or common council, as the case may be, and the appointing authority is left free to act in its integrity, the mere fact that they may be prohibited from making the choice from one particular class or political party may not invalidate the statute. There is, we think, a distinction between such a statute and that now under consideration, where the local authority is so divided that its action cannot be said to represent the popular will, but rather the choice of the central authority.

63

In any case where the selections have been made and the persons selected have qualified and assumed the duties of the office, it may be that their official acts would not be void merely because the power under which they were appointed obeyed a statute, open to some constitutional objection, in making the selection of the appointees. It is unnecessary, however, to consider or decide such questions until they are properly before us. All we mean to say is that the condemnation of this statute does not necessarily vacate the places or invalidate the official acts of city officers holding under statutes to which attention has been called, and which it is claimed are identical with that now under consideration. (*Curtin* v. *Barton*, 139 N. Y. 505.)

We are dealing now with the provisions of the bill before us, and with nothing else. Confining the discussion and examination to that alone, we are compelled to hold that, in the particulars pointed out, it is in conflict with the Constitution.

There was nothing decided in the case of *Rogers* v. *Common Council of Buffalo* (123 N. Y. 173) which tends to sustain the provisions of this bill. That case involved no question which is really pertinent here. The question there was with respect to the power of the legislature to create the state civil service board. Since it was not claimed that they were in any sense city or local officers, the meaning of that provision of the Constitution which secures local self-government to cities was not involved. It was held that the legislature had the power to provide that not more than two of the members should belong to the same political party, but that is not the question here. The law did not require that any of them should be a member of any party or profess any particular political faith. It proscribed no one and disfranchised no one on account of his political opinions. It simply provided that a state board, the object and purpose of which was to remove the civil service from the conflicts of politics, should not itself be or become a political machine.

The bill now under consideration is framed upon widely

different principles. It carefully provides that no one but a partisan shall be appointed or can under any circumstances hold the office. In a board composed of four persons two political parties are each represented by two adherents, and in case of a disagreement, practically certain to occur, the legislature has designated a person to discharge its functions until such time as the members may be able to agree.

We think that the plaintiffs were entitled to maintain the action and that it was not prematurely brought. ( *Williams* v. *Boynton*, 147 N. Y. 426 ; *Flood* v. *Van Wormer*, Id. 284.)

The judgment should be affirmed, with costs.

BARTLETT, J. (dissenting). This appeal presents the question whether chapter 427 of the Laws of 1896, amending existing statutes and repealing others for the purpose of reorganizing the police board and the police force of the city of Albany, is constitutional. The plaintiffs are taxpayers of the city of Albany, who secured a judgment at Special Term perpetually enjoining the common council of that city from electing or appointing police commissioners under the act in question, upon the ground that it is unconstitutional. The Appellate Division, third department, having affirmed the judgment, this appeal is taken.

The questions involved were exhaustively discussed by the courts below, and in the Appellate Division many general legal propositions were debated at great length and fortified by citations of authority concerning which there can be no real difference of opinion.

It goes without saying that, under our form of government, the majority are to rule, and that the principle of local self-government is recognized and protected in the Constitution and statutes of the state. If the act now under review subverts either of these great principles of popular government, it must be declared unconstitutional and void.

I shall refrain from discussing the propositions pressed upon the attention of the court involving general principles, and consider only the specific grounds upon which the act is attacked.

Section one of the act amends section three of chapter 77, Laws of 1870.

Among other new provisions are the following : " The police board of the city of Albany shall consist of four police commissioners, not more than two of whom shall belong to the same political party or organization, and who shall be chosen and hold office as hereinafter provided. * * * No person is eligible to the office of police commissioner unless, at the time of his election, he is a member of the political party or organization having the highest or next highest representation in the common council."

The first quoted sentence, in so far as it limits eligibility, is not in violation of the Constitution, as this court approved similar phraseology in *Rogers* v. *Common Council of Buffalo* (123 N. Y. 173). The second quoted sentence, which practically confines eligibility to members of the two great political parties cannot, I think, be sustained as a constitutional provision.

If this latter sentence can be eliminated from the section where it is found, and still leave the act complete in itself and capable of enforcement, it disposes of one of the principal objections relied upon by the plaintiffs and greatly simplifies this discussion.

With this unconstitutional provision stricken out the section would provide that the number of police commissioners should be four, not more than two of whom shall belong to the same political party. In the *Rogers* case (123 N. Y. 173) the Civil Service Act was attacked on the ground that the limitation placed upon the governor in appointing commissioners, to the effect that not more than two of the three commissioners should " be adherents of the same party," rendered the act unconstitutional and void as violating that provision of the Constitution which declares that " no member of this state shall be disfranchised or deprived of any of the rights or privileges secured to any citizen thereof, unless by the law of the land or judgment of his peers." (Art. 1, sec. 1.) It was also claimed to violate that part of section 6, art. 1, which

declares that no person shall be "deprived of life, liberty or property without due process of law." Still another ground was urged that the act was in conflict with art. 13, sec. 1, as exacting an unlawful test of eligibility for public office.

Judge PECKHAM, in delivering the opinion of the court, refers to the fact that provisions of a similar nature are contained in numerous statutes, the latest being the state railroad commission and the state board of arbitration.

While no conclusive argument can be based upon such legislation, it is proper to refer to it as showing the practical construction of the Constitution which has been acquiesced in for many years.

A few sentences from Judge PECKHAM's opinion disclose the precise ground on which this court rested its decision. The opinion after calling attention to the fact that the legislation under review was an effort to do away with the "semi-barbarous maxim" that "to the victors belong the spoils" and replace it by a system of appointment based solely upon merit, administered by a commission that could not be made up exclusively of the adherents of any one political party, goes on to say: "The appellant bases his argument upon the proposition that every citizen has a right, which is protected by the Constitution, to be regarded as eligible to hold any office, unless the Constitution has itself prescribed certain qualifications for such holding. He then asserts that the statute in question violates this constitutional right." The court, after stating that it was not necessary to pass upon the correctness of this general claim, said: " We think his right to be regarded as eligible to hold office under this statute is fully recognized when he stands on an equal footing with others of his class, all of whom are eligible. * * * It must be remembered that there is nothing in this statute which compels the appointment of even one member of any political party. It simply prevents the appointment of more than two from such party. * * * The purpose of the provision is, of course, plain. It seeks to secure the appointment of persons who are not all of the same political views, and thus to provide for a repre-

sentation in the body so appointed, of different and probably conflicting interests in the state. We cannot believe that the section in question does or was intended to operate so as to prevent the execution of such a purpose so carried out."

This reasoning applies with equal force to the case at bar and must be deemed conclusive. The fact that we are dealing now with the police commissioners of a city and that the *Rogers* case treats of a state commission, does not affect the situation. The question of the authority conferred upon the common council and its legality is not here considered, but will be dealt with later.

I come then to the provision that no person is eligible to the office of police commissioner unless at the time of his election he is a member of the political party or organization having the highest or next highest representation in the common council.

The effect of this provision is to exclude from eligibility all persons who do not belong to one or the other of the great political parties of the country. This is the practical disfranchisement of a numerous class of citizens and violates the Constitution (Art. 1, sec. 1). I do not refer to legislative limitations requiring skilled knowledge in the appointee when the duties of the position call for it, as that situation would present a very different question, even if the Constitution was silent as to the qualifications of the officer.

The case at bar presents an instance of the arbitrary and unexplained exclusion of a considerable number of the citizens of Albany from the class eligible to fill the office of police commissioner. No sufficient reason has been suggested for such legislation.

In *Barker* v. *People* (3 Cowen, 686) the Court of Errors, in construing the penal provisions of an act to suppress duelling, had occasion to discuss this question of arbitrary exclusion from eligibility to office, and uses this language (page 703) : " Eligibility to office, therefore, belongs, not exclusively or especially to electors, enjoying the right of suffrage. It belongs equally, to all persons whomsoever, not excluded by

the Constitution. I therefore conceive it to be entirely clear, that the legislature cannot establish arbitrary exclusions from office, or any general regulation requiring qualifications, which the Constitution has not required."

It is further urged on behalf of the plaintiffs that this provision we are considering prescribes a political test in violation of art. 13, sec. 1, of the Constitution. As the provision is void for reasons already stated, it is unnecessary to consider this point in detail, but I am of opinion it is well taken.

We come, then, to the question whether, if this provision is eliminated from the section where it stands, the act will remain complete in itself and be capable of enforcement?

It cannot be assumed that the main object of the amendatory statute was to provide that the police commissioners should belong to one or the other of the great political parties.

It is rather to be inferred that the legislature was seeking to remove the board from partisan control, and the general legal presumption is that it intended to enact a constitutional measure. So far as providing for eligibility is concerned, section one of the act would be complete and constitutional if permitted to stand with the sole provision that not more than two of the four commissioners should belong to the same political party or organization.

The general scope and object of the act would not be in any way impaired by this change.

This court has recently reaffirmed the well-settled principle that where the void provisions of an act are separable from those that are lawful, and that which remains is capable of being executed, it may be treated as constitutional. (*Matter of N. Y. & Long Island Bridge Co.*, 148 N. Y. 540, 554.) The application of this principle to the case at bar leads to the elimination of the unconstitutional provision and permits the act to be carried into effect without it.

The next ground of attack upon the act is that certain provisions of section one are violative of art. 10, sec. 2, of the Constitution, which provides that " All city, town and village officers, whose election or appointment is not provided for by

this Constitution, shall be elected by the electors of such cities, towns and villages, or of some division thereof, or appointed by such authorities thereof as the legislature shall designate for that purpose. All other officers whose election or appointment is not provided for by this Constitution, and all officers whose offices may hereafter be created by law, shall be elected by the people or appointed, as the legislature may direct."

Section one of the act provides: " On the first Monday after the passage of this act the common council shall meet at eight o'clock in the evening in the common council chamber, and shall proceed to elect four persons, residents and freeholders in the city, as such police commissioners, and for the purpose of such meeting the members attending shall constitute a quorum. Each member of the common council shall be entitled to vote for not more than two of such persons, and the four persons receiving the highest number of votes shall be such police commissioners."

It was undoubtedly the intention of the legislature to designate the common council, as a body, to appoint the police commissioners under this act in pursuance of the provisions of the Constitution just quoted.

While it does not seem to be seriously questioned that the common council is a city authority under the Constitution, it is insisted that the legislature had no power to direct or restrict its action in the appointment of police commissioners.

As the Constitution authorizes the legislature to impose this new duty of appointing the police commissioners upon the common council, it seems reasonable that it should prescribe the · details of procedure, provided it does not deprive the appointing authority of the power to act in the premises. Has the common council in any proper legal sense been deprived of the power conferred upon it by the act in question ?

The plaintiffs insist that it has in several important particulars.

The first point made is, that the common council, in this one instance, is deprived of the power to act as a collective official body in the usual manner. This point refers to the provision

of section one, already quoted, requiring the common council
to meet at a time and place designated, and further enacts that,
"for the purposes of such meeting the members attending
shall constitute a quorum."

The very obvious reason for this provision as to quorum
was to secure prompt action and prevent obstructive tactics
on the part of those aldermen who might be opposed to carry-
ing the act into effect.

Full notice of this meeting appears on the face of the act,
and every alderman was at liberty to take part in the action of
the common council if he saw fit to attend.

It was competent for the legislature, "for the purposes of
such meeting," to provide for a special quorum in order to
compel full attendance and speedy action. It rested wholly
with the aldermen to preserve the old quorum.

The same line of reasoning justifies the provision that the
common council should transact no other business until the
police commissioners were elected.

The next point taken against the act is based on the pro-
vision of section one, that each member of the common coun-
cil shall be entitled to vote for not more than two of the four
police commissioners. The argument against the validity of
this provision loses much of its force by dropping out of sec-
tion one the unconstitutional provision which limits eligibility
to the members of the two great political parties. We then
have an act which provides, with the sanction of this court,
speaking in the *Rogers* case (123 N. Y. 173), that only two of
the four police commissioners shall belong to the same politi-
cal party. If this salutary principle, approved by this court,
is to be carried out by appropriate legislation, why may not
a member of the common council be restricted in his vote to
two of the candidates in order to secure that result, precisely
as the governor was limited to naming but two adherents of
any one political party in making his appointment of civil
service commissioners with the approval of this court in the
*Rogers* case? If the effort to constitute public boards to some
extent non-partisan or bi-partisan, by legislation that makes it

impossible for all the members to belong to one political party or organization, is commendable and approved by this court as constitutional, why are not minor provisions in an act calculated to accomplish the desired result not only necessary but legal?

With what propriety or logic can it be said in the case at bar that the common council of the city of Albany, and every member thereof, is vested with the indefeasible legal right to vote for all four of the police commissioners, thereby defeating the will of the legislature as constitutionally expressed, and rendering impossible the creation of a non-partisan board?

The legislature has not invaded the right of its constitutional agent to appoint this board; with the act stripped of the provision confining eligibility to members of the two great political parties, the common council is free to select its board of police commissioners from the entire body of freeholders in the city of Albany, subject only to the constitutional restraints imposed by the act in order to secure a non-partisan board. The appellants have urged the argument of practical construction with great earnestness, and insist that years of legislative interpretation of the Constitution and the practical construction given to a statute by the public officers of the state and acted upon by the people thereof, are decisive in case of doubt. (*People ex rel.* v. *Dayton,* 55 N. Y. 367, 377; *People* v. *Home Ins. Co.,* 92 N. Y. 337; *People ex rel. Einsfeld* v. *Murray,* 149 N. Y. 367.)

I am not able within the reasonable limits of this dissenting opinion to examine the numerous statutes and precedents to which we have been referred, although I do not fail to recognize their persuasive force, but for reasons already stated I think it was competent for the legislature to provide that each member of the common council should be entitled to vote for not more than two of the police commissioners, and in so doing it did not violate the principle of local self-government, but carried out the bi-partisan policy approved by this court.

I will only state my conclusions as to some of the remaining points argued at the bar.

Objection is made to the provision that if a vacancy shall occur in the board of police commissioners, otherwise than by expiration of term, it shall be filled by appointment by the mayor upon the written recommendation of a majority of the members of the common council belonging to the same political party or organization as the police commissioner whose office shall become vacant.

Unless some mode of procedure is provided to maintain the non-partisan character of the board in filling vacancies, the purpose of the act in this regard might easily be defeated. Having that end in view, I see no objection to the provision under consideration.

Attack is made on the provision in section four of the act that in case of a failure of the board to appoint a chief of police, then the senior captain of police on January 1st, 1896, shall act as such and possess all the powers and perform all the duties of the chief of police and receive the salary of chief of police until the board shall make an appointment.

In case of the failure of the board to appoint the captains or sergeants provided for by this act, then it is the duty of the chief or the acting chief "to assign members of the police force to perform such duties until the board shall make such appointment."

The plaintiffs claim that when the senior captain is given the power of chief of police he is given new powers and invested with the duties and emoluments of a distinctively new office in direct hostility to the command of the organic law.

This is not the effect of the provision as to the senior captain's duties in case the board failed to appoint a chief of police ; no new office is created ; the duties of the chief of police are devolved upon the senior captain in a certain emergency which might arise in a board consisting of four members, if tied, as to the appointment of a chief of police ; the senior captain was to act only during an interregnum, if at all, in order to preserve the efficiency of the force in case the police board failed to act promptly for any reason.

A provision like this, seeking to guard against a mere pos-

sible danger, is in no legal sense an appointment to public office by the legislature. It is no more in legal effect than saying that when a regular officer is disqualified to act in a given case some other official may discharge his duties on that occasion. (*Matter of Hathaway*, 71 N. Y. 238.)

The point is made that the provision that no person shall be eligible to appointment on the police force who is over forty years of age is in violation of the civil service provisions of the Constitution.

It is a common practice in military and police organizations not to receive new members who are over a certain specified age; this is supposed to conduce to the efficiency of the force, and any reasonable legislation in this direction is valid.

The other points raised on the briefs have been considered, but will not be discussed.

I am clearly of opinion that the act under consideration is constitutional and valid, except as to the clause limiting eligibility to the office of police commissioner to membership in the two great political parties, which should be eliminated therefrom.

The judgment appealed from should be reversed, and judgment ordered for defendants in conformity with this opinion.

MARTIN, J. (dissenting). The only question involved in this case is the constitutionality of chapter 427 of the Laws of 1896. The principal question relates to the validity of section one of that act, which amends section three of title twelve of chapter 77 of the Laws of 1870.

Whether this act was politic or impolitic, wise or unwise, is not to be considered by this court, as the authority to determine those questions is vested in the legislature alone. The power of the legislature to pass such laws as it may, in its discretion, deem proper and for the best interests of the state, or any division thereof, or of the whole or any portion of its inhabitants, has been conferred upon the senate and assembly and is absolute and unlimited, unless in conflict with some provision of the Federal or State Constitution. (Constitution,

art. 3, § 1.) While the people of the state are sovereign and originally possessed the sole power of legislation, yet they have delegated that power to the senate and assembly, except as they are restricted by constitutional limitations. Therefore, before a law can be declared invalid it must be found to be in conflict with some provision of the organic law. (*People ex rel.* v. *Fisher*, 24 Wend. 215, 220; *Cochran* v. *Van Surlay*, 20 Wend. 365, 382; *Wynehamer* v. *People*, 13 N. Y. 378, 430; Cooley on Const. Limitations [6th ed.], 202, 204; *Bank of Chenango* v. *Brown*, 26 N. Y. 467, 469; *People* v. *Cannon*, 139 N. Y. 32, 42; *People ex rel.* v. *Flagg*, 46 N. Y. 401, 404; *Rogers* v. *Common Council of Buffalo*, 123 N. Y. 173, 181.) The act under consideration, like every other statute, must be upheld, unless it is in plain and substantial conflict with some particular provision or provisions of the Constitution. (*People ex rel.* v. *Briggs*, 50 N. Y. 553, 558; *People* v. *Gillson*, 109 N. Y. 389, 397; *People ex rel.* v. *Durston*, 119 N. Y. 569, 577; *People ex rel.* v. *Rice*, 135 N. Y. 484.)

The respondents contend that the provisions of this statute which declare that not more than two of the police commissioners shall belong to the same party or organization, that each member of the common council shall be entitled to vote for not more than two of such persons, and that no person is eligible to the office unless, at the time of his election, he is a member of the political party or organization having the highest or next highest representation in the common council, are in contravention of the Constitution of this state and, consequently, void.

The general principle contained in these provisions is by no means new. For more than a quarter of a century, the current of public opinion and of Federal and State legislation has been in the direction of establishing non-partisan boards or commissions for the administration of Federal, State and municipal affairs. Without particularly referring to the various statutes creating boards or commissions for the administration of the affairs of the Federal or State government, but confining our examination to a portion of the cities of the

state, we find that in some form or other this principle exists in the statutes regulating the municipal affairs of a majority of them.

Thus, in the city of Yonkers four commissioners of police are appointed by the common council by ballot, and each member present *can vote for only two.* (Laws 1873, ch. 163.) In the city of Utica, the mayor appoints the police and fire commissioners, two of whom are appointed from each of the *two principal political parties of the state.* (Laws 1874, ch. 314.) In the city of Elmira, such commissioners are appointed by the common council, and such appointments are required to be so made that the *two principal political parties represented in the council* shall be equally represented. (Laws 1875, as amended, title 8, § 103, subdivision 2.) The charter of the city of Binghamton requires the mayor to appoint four such commissioners, two from each of the *two principal political parties of the state,* and when a vacancy occurs that the common council shall appoint a successor in the same manner. (Laws 1881, ch. 6, § 1.) An act to establish a board of fire commissioners for the city of Rome provides that the mayor shall appoint four commissioners, two of whom shall be selected from each of the *two principal political parties of the state,* and at the expiration of the term of any such commissioner, his successor shall be appointed from the political party to which the former belonged. (Laws 1881, ch. 517, §§ 2, 4.) The charter of the city of Lockport provides for the appointment of four police commissioners, two of whom *shall be members of each of the two principal political parties.* (Laws 1882, ch. 48.) An act to establish a police department in the city of Buffalo provides that the mayor shall appoint two citizens as commissioners of police, *one from each of the two principal political parties,* and that in all appointments thereafter made, the non-partisan character of the board shall be preserved and maintained. (Laws 1883, ch. 359, § 2.) An act to increase and reorganize the police force in the city of Troy provides that the common council *shall appoint two police commissioners of opposite politics,* and at the expira-

tion of their term the successor of the two whose terms of office shall expire shall be elected by ballot by the common council, *but that no member of the council shall vote for more than one of such commissioners.* (Laws 1885, ch. 54, § 1.) Chapter 79 of the Laws of 1877 provided for the reorganization of the fire department of the city of Syracuse, that such commissioners should be elected, *but that no ballot should contain more than one name,* and the two persons receiving the highest number of votes should be elected. Chapter 17 of the Laws of 1869 provided for the election of four police commissioners in that city, *but declared that no ballot should contain more than two names.* (Laws 1874, ch. 542.)

The charter of the city of Syracuse provides for a fire commission, and also for a police commission, and that the commissioners then in office should continue until the expiration of their term, when the mayor is required to appoint as successors to such commissioners persons *who shall belong to the same political party as the* commissioner whom he is appointed to succeed. The provisions as to fire and police commissioners are identical. (Laws 1885, ch. 26, §§ 186, 187, 205, 206.) The statute establishing a board of police commissioners for the city of Watertown requires the mayor to appoint four commissioners, *two from each of the two principal political parties of the state,* and that the successor to any such commissioner shall be a member of the political party to which the commissioner whose office has expired belonged. (Laws 1885, ch. 189, § 19.) Chapter 255 of the Laws of 1870 provides for the election of four police commissioners for the city of Oswego, but that *no ballot shall contain more than two names.* Chapter 46 of the Laws of 1879 contains the same provision as to the election of school commissioners for that city. Chapter 197 of the Laws of 1867 provided for filling vacancies in the board of fire commissioners in the city of Albany, *and that no ballot should contain more than one name.*

Chapter 328 of the Laws of 1880 declared *that no member of the common council* of the city of Troy, in electing police

commissioners, *should vote for more than one.* Chapter 186 of the Laws of 1872 provided for the election of four police commissioners for the city of Albany, but that no voter should *be entitled to vote for more than two persons* for such office. Chapter 515 of the Laws of 1874 related to the election of aldermen in the city of New York, and provided that three should be elected for each ward except the eighth, but that *no voter should vote for more than two.*

The same principle has existed in statutes relating to the appointment of election officers since the organization of our state government, although not protected by any constitutional provision before the amendment of 1894, the obvious purpose of which was to forbid any change in these time-honored laws.

The statutes already referred to sufficiently show the course of legislation in this state upon the subject, and render the examination of other statutes quite unnecessary.

If all the various statutes of the state relating to the government of cities which contain provisions involving the principle contained in the statute under consideration are to be held void, it must result in a general derangement of the affairs of all the cities in the state, and lead to boundless confusion in matters relating to their government.

" An unconstitutional act is as if it had never been passed by the legislature. It can confer no rights and afford no protection." (*Chenango Bridge Co.* v. *Paige*, 83 N. Y. 178, 190; Cooley on Constitutional Limitations, 188; Endlich on Interpretation of Statutes, § 358.)

Relying upon the validity of this principle, commissions for the police, fire and other departments of the various cities have been organized under statutes containing the identical principle contained in this, which must be regarded and treated as invalid if this statute is held void for that reason. If the various statutes under which such commissions have been appointed are invalid, it must necessarily follow that all the appointments made by such commissions are also invalid, and, consequently, all the members of the police force, fire

and other departments of such cities, and all officers appointed by these various commissions are without title to their office, are entitled to no compensation, and may be held liable for many acts they have performed in reliance upon the integrity of the provisions of these various statutes.

It is to be presumed that this court will adhere to the principle of the decision in this case, and it must apply to every such city in the state and be regarded as condemning all such provisions in the various statutes under which they were incorporated or by which they are governed.

Hence the question of their validity is a far-reaching one, and is of great importance, involving, as it does, the governmental affairs of nearly every city in the state. Therefore, it should not be hastily or inconsiderately held invalid, whatever may have been the purpose which induced the passage of this particular act. Its purpose must be presumed to have been proper, especially in view of the fact that the police and fire commissioners for that city were elected nearly thirty years since under a statute which included the principle contained in this. Not only is every intendment in favor of the validity of statutes, but no motive, purpose or intent can be imputed to the legislature in the enactment of a law other than such as are apparent upon the face and gathered from the law itself. (*People ex rel.* v. *Albertson,* 55 N. Y. 54.)

Moreover, if the purpose which induced its passage was improper, still, the responsibility is not ours, but rests elsewhere. Unless these provisions of the statute are plainly and clearly in substantial conflict with some particular provision of the Constitution, this court should not declare them void. There should be no reasonable doubt of the unconstitutionality of a statute before it should be annulled by judicial action, and all doubtful questions should be resolved in favor of the validity of the act, or, as was said by ALLEN, J., in *People ex rel.* v. *Albertson* (*supra*): "A law which has received the sanction of the legislature and the approval of the executive should only be held void as repugnant to the Constitution when the repugnancy is clearly demonstrated."

From 1867 to 1896 the legislature has almost yearly passed statutes involving in some form the general principle contained in the statute under consideration, which have been approved by the executive and acted upon by the different municipalities without dissent or question. As early as 1867 that principle was applied to the election of fire commissioners in the city of Albany, and in 1872 was applied to the election of police commissioners for that city. Thus for nearly thirty years, notwithstanding the frequent changes of officers in the different municipalities, a practical construction has been given to the Constitution, so far as it affects laws containing this principle, to the effect that they are valid and controlling as to the matters to which they relate.

The practical construction given by the legislature to constitutional provisions, for many years acquiesced in and acted upon, unquestioned by the executive and administrative branches of the government, is entitled to controlling weight in its interpretation, and has almost the force of a judicial exposition. (*People ex rel. Williams* v. *Dayton,* 55 N. Y. 367, 378; *People* v. *Home Ins. Co.,* 92 N. Y. 328, 337; *Matter of W. S. A. & P. R. R. Co.,* 115 N. Y. 442, 447; *People ex rel.* v. *Murray,* 149 N. Y. 367, 376.) As was said by Ruger, Ch. J., in the *Home Ins.* case (*supra*): "It would now seem too late to raise a question of such importance and fraught with such dangerous consequences to those engaged in the enforcement of the laws."

I think, as was in effect said by Andrews, Ch. J., in the *Murray* case (*supra*), this legislative policy which has prevailed for so long a period, sanctioned by numerous statutes, never questioned in the courts and acquiesced in by all departments of the state and municipal governments, is a practical construction of the provision now in question, and this construction ought not now to be disturbed. I had supposed the foregoing to be a well-established rule of law, to be applied with the same certainty and uniformity as any other, and not a mere rule of convenience. If this supposition is correct, then I cannot understand why it should have been applied to sustain

the Excise Law and the various other statutes under consideration in the cases cited, and not in this. If there was ever a case where the principle of practical construction should be applied, manifestly this is one. Every correct principle and proper consideration require it. The confusion, derangement and consequent hardship that must follow the condemnation of all these statutes seem to me to demand the application of that principle in this case, if necessary to uphold this and the various other statutes authorizing the organization of commissions for the management and control of the municipal affairs of a majority of the cities of the state.

The principle involved in this class of legislation has been expressly approved by this court. In the case of *Rogers* v. *Common Council of Buffalo* (123 N. Y. 173) Judge PECKHAM, who delivered the opinion of the court in that case, fully discussed the question of improving the public service by means of non-partisan commissions or boards. He in strong terms commended that principle, and as strongly condemned what he termed the semi-barbarous system represented by the maxim that " To the victors belong the spoils." In that opinion all the judges of this court concurred, except RUGER, Ch. J., who concurred in the result.

Thus to the wisdom and propriety of this class of legislation this court seems fully committed. If the principle there commended is to be now condemned and this class of statutes is to be held invalid, we shall take a long step backwards. It will constitute a positive retreat from the position that the public affairs of the municipalities of the state should be removed from the influence of partisan politics, and besides it will be accompanied by the disastrous consequences already indicated and demoralize and seriously injure the public service.

The question in the *Rogers* case arose under the Civil Service Act of 1883, which provided for the appointment of three civil service commissioners, not more than two of whom should be adherents of the same party, and it was held not to be violative of any of the provisions of the State Constitution. We have in that case a direct authority to the effect

that the provision of the statute under consideration, which provides that not more than two of the four police commissioners to be appointed shall belong to the same political party or organization, is valid. Indeed, it is conceded by the respondents that if this provision stood alone the constitutional objections now urged against it could not be sustained.

They, however, insist that the provision which follows, declaring that each member of the common council shall be entitled to vote for not more than two of such persons, and the four persons receiving the highest number of votes shall be such commissioners, is in conflict with the provisions of the Constitution. The claim now most strongly urged is that, under the provisions of section 2 of article 10, the legislature had the power to select the local authority by which the appointment should be made, but that, having conferred that power upon the common council, it must be regarded as conferring the authority upon that body as such; that it can only act as a collective, official body by the voice of its majority, and that this provision is consequently void.

If by this act the legislature had selected the common council as the authority by which such appointment should be made, without any provisions as to the manner in which such commissioners should be elected, it might perhaps be that it could have acted only in the manner suggested. But such is not the case. It provided that in determining who should be elected such commissioners, each member of the council should vote for not more than two, the practical effect of which was to carry into execution the provision that no more than two of such commissioners should belong to the same political party or organization, on the assumption that the members constituting the common council would vote for commissioners who were members of their own party.

That the legislature possessed the power to amend the charter of the city of Albany so as to define the duties and prescribe the powers of the common council and to direct the manner in which it, as the authority of that city, should elect the police commissioners, I have no doubt. It could have pro-

vided that there should be a two-thirds vote, a majority vote or less. The municipality, the existence of the common council, the duties it shall perform, and all its acts of a governmental character are under the control of the legislature.

Section one of article eight of the Constitution of the state authorizes the legislature to create municipal corporations by general or special acts, and to alter or repeal such acts from time to time. In *People ex rel. v. Briggs (supra)* CHURCH, Ch. J., said : " A municipal corporation is a part of the governmental machinery of the state, organized not for the purpose of private gain, like private corporations, but for the purpose of exercising certain functions of government, within a specified locality ; and it possesses such powers, and such only, as are conferred upon it by the legislature ; and they are to be exercised in such form, mode and manner, and by such agencies as the legislature may from time to time prescribe, within the limits of the Constitution. * * * Over all its civil, political or governmental powers the legislature is, in the nature of things, supreme and without limitation, unless restrained by the Constitution." Dillon, in his work on Municipal Corporations, in treating of the power of the legislature over municipal corporations, says : " Over all its civil, political or governmental powers the authority of the legislature is, in the nature of things, supreme and without limitation, unless the limitation is found in the Constitution of the particular state."

Assuming then, as we must, that the legislature had the power to provide in what manner the common council should discharge its duties, it had the authority to provide for the election of police commissioners in the manner pointed out by the statute. The effect of this provision was to amend the charter of the city of Albany so far as it related to the manner in which the common council should act. As there is no constitutional provision which in any way prevents the legislature from providing the manner in which that body shall act in the selection of officers, it is quite plain, I think, that this statute is not in conflict with the provision of the Constitution under consideration.

It is, however, suggested that under this statute the members of the common council might all vote for only two members of the police commission, and that then their power would be spent and but two members elected. This suggestion must, I think, be regarded as too speculative and improbable to require discussion or serious consideration. But should that condition arise, there would at most be a vacancy in the office of two commissioners, which might be filled in the manner pointed out in the statute. Moreover, if the statute is simply defective, it by no means follows that the whole statute must be condemned.

It may be observed, in passing, that the question, whether the police commissioners to be thus appointed were officers of the city within the meaning of the provisions of section two of article ten may not be entirely free from doubt. (*Matter of N. Y. Fire Department* v. *Atlas Steamship Co.*, 106 N. Y. 566.)

It has been intimated that, while the legislature possesses the power to select and confer upon the authorities of a city the right to appoint all city officers whose election or appointment is not provided for by the Constitution, yet it has no power to in any way limit that right by providing the method in which such appointments shall be made by the city authorities, or the qualifications which such appointees shall possess. In *People ex rel.* v. *Warden, etc.* (144 N. Y. 529), the validity of chapter 602 of the Laws of 1892 was considered by this court, and was held to be constitutional and valid. By the provisions of that act it was made the duty of the mayor of each of the cities of the state to appoint a board for the examination of plumbers of each city, to consist of five persons, two to be master plumbers of not less than ten years' experience, one to be a journeyman plumber of like experience, and the others to be the chief inspector of plumbing and drainage of the board of health, and the chief engineer having charge of sewers in such city. Thus, by that act the legislature in effect prescribed not only the qualifications which the appointees should possess, but, as to some, practically who should be

appointed. It is possible that that decision may be sustained upon the ground that those officers fell within the last sentence of that section of the Constitution, which provides that all officers whose office may hereafter be created may be elected or appointed, as the legislature may direct, although not placed on that ground. It seems to me, however, that the doctrine of that case bears upon the question and tends to sustain the validity of the statute under consideration, so far as this immediate question is concerned.

In the *Rogers* case (*supra*) it was argued that the Civil Service Act, which was then under examination, was violative of this section of the Constitution. The provisions of that statute required the mayor to prepare certain rules under which the city officers were to be selected, which were to go into effect only when approved by the state civil service commission, and that no officer or clerk should be appointed, and no person should be permitted to enter or be promoted into the classes established, until he had passed the required examination. It was contended that the power conferred upon the public authorities of the city to appoint a street or health inspector of that city was limited by such requirement, and, hence, the act of 1883 was void as being in contravention of § 2 of art. 10 of the Constitution. But, by that act, the authority to appoint city officers was limited to an extent which required them to be examined under the provisions of that statute and under rules to be approved by the civil service commission, but it was held that there was no such limitation upon the rights of the local authorities to appoint such officers as to bring the statute within the condemnation of that provision of the Constitution. It will be remembered that that statute was passed before the amendment to the Constitution.

Again, it is a well-established rule of construction that before a statute should be declared invalid it should appear that it is in plain and *substantial* conflict with some particular provision of the Constitution. Thus, the conflict must not only be plain, but it must be substantial as well. The statute

must be affected by the provision of the Constitution relied upon in some substantial and material particular. If that portion of a statute which is relied upon as a basis for its condemnation is not essential to the accomplishment of its general purpose, the statute cannot be said to be in substantial conflict with the Constitution. The fact that a statute may be in conflict with the fundamental law in some slight or unessential particular, forms no just basis for its condemnation. In other words, unless the provision of a statute will effect a result which will subvert the object and frustrate the purpose of the Constitution, it should be held valid. "The substance of a thing is the essential or important part; the material thing; that in and for which a thing chiefly exists." (See "Substance," Abbott's Law Dictionary; Anderson's Dictionary of Law; Rapalje & Lawrence's Law Dictionary.)

It is manifest from a reading of this statute that the purpose of this provision was merely to carry into effect the former provision that not more than two of the commissioners should belong to the same political party. It was the means devised by the legislature to carry into execution what is conceded to be a valid provision of the statute. The dominant purpose of that provision was to establish for the city of Albany a non-partisan board of commissioners. Whether the means to secure that result was a provision that each member of the common council should not vote for more than two of such commissioners, or that each member should vote for the four commissioners, only two of whom should belong to the same political party, was at most a mere matter of detail by which to accomplish the chief purpose of the act. If this provision had not been included in the statute, manifestly, the latter would have been the plan by which the purpose of the legislature would have been carried into effect. That the statute has provided a different method to accomplish the same purpose is unessential, and the provision cannot be properly said to be one of substance. Indeed, that the aldermen or members of the common council as such were authorities of the city within the meaning of the Constitution, I have no doubt.

(*People* v. *Raymond*, 37 N. Y. 428, 431; *People ex rel.* v. *Board of Canvassers*, 129 N. Y. 366.)

The respondents also contend that the provision of this statute which declares that no person is eligible to the office of police commissioner unless, at the time of his election, he is a member of the political party or organization having the highest or next highest representation in the common council, is void under the provisions of the Constitution of the state. Many of the statutes to which we have already referred contain a similar provision, and hence the doctrine of practical construction is applicable, and this provision may be sustained. Independent of that doctrine, I might be inclined to agree with the contention of the respondents. But I do not deem it necessary to determine the question whether that provision is valid or invalid. If the latter, I am of the opinion that it may be eliminated from the act and still the apparent and manifest object and purpose of the legislature be effected by the statute as it would then remain.

It seems to be well settled that where only a part of a statute is unconstitutional, that fact does not authorize the court to declare the remainder void, unless the provisions are so dependent and connected with the object or purpose of the act that it cannot be presumed that the legislature would have passed it without including such void provision. The fact that the legislature may have erred in a matter of detail does not defeat the whole act where when the unconstitutional portion of the statute is stricken out, that which remains is complete in itself and capable of being executed in substantial accordance with the apparent legislative intent. (*People ex rel.* v. *Bull*, 46 N. Y. 57, 69; *Gordon* v. *Cornes*, 47 N. Y. 608, 617; *People ex rel.* v. *Briggs*, 50 N. Y. 553; *People ex rel.* v. *Kelly*, 76 N. Y. 475, 489; *Matter of Village of Middletown*, 82 N. Y. 196; *Duryee* v. *Mayor, etc., of N. Y.*, 96 N. Y. 477; *People ex rel.* v. *Kenney*, 96 N. Y. 294; *Lawton* v. *Steele*, 119 N. Y. 226; *Matter of N. Y. & Long Island Bridge Co.*, 148 N. Y. 540.)

66

An examination of these cases discloses the extent to which this court has proceeded in applying that rule to various statutes when they have contained unconstitutional provisions and still have been upheld as to the remainder. In many of them this court seems to have gone further than is required to sustain the statutes in question. Who can say that there is any such connection or dependence between this provision and the remainder of the statute that it must be presumed that the legislature would not have passed it with this provision eliminated, or, in other words, that it cannot be presumed that it would have passed it omitting that provision if it had been regarded as invalid? I do not think it can be reasonably doubted that if the legislature had supposed or understood that this provision was invalid, it would still have passed the statute without it. Nor do I think the other provisions of the statute are so connected with or dependent upon that provision that they cannot be divided without defeating the object and intent of the statute.

As has already been suggested, the controlling purpose of this statute is to provide for the appointment of four police commissioners for the city of Albany, only two of whom should belong to the same political party. If the provision that no person is eligible to the office of police commissioner, unless at the time of his election he is a member of the political party or organization having the highest or next the highest representation in the common council, were entirely blotted out, the statute as it would then remain would obviously carry into effect the fundamental and substantial intent and purpose of the legislature.

The respondents also contend that the provision of the statute for filling vacancies by which the mayor is permitted to appoint commissioners upon the written recommendation of a majority of the members of the council belonging to the same political party or organization as the police commissioner whose office is vacant, is also in conflict with section two of article ten of the Constitution. Section five of article ten of the Constitution provides that the legislature shall provide for

filling vacancies in office. In *People ex rel.* v. *Snedeker* (14 N. Y. 52, 59) it was said : " The effect of this provision of the Constitution, doubtless, was to confer upon the legislature the power to provide for filling vacancies in a different manner from the existing method in case it should be deemed proper."

In the case of *Rogers* v. *Common Council of Buffalo* (123 N. Y. 173) chapter 354 of the Laws of 1883 was under consideration. That statute contained a provision that any vacancy in the position of commissioner should be so filled by the governor, by and with the advice and consent of the senate, as to conform to the conditions for the first selection of such commissioner. The spirit of that provision is practically identical with that contained in the act under consideration, and that case should, I think, be regarded as an authority to the effect that such a provision is valid.

I am unable to discover any provision of the Constitution with which this portion of the statute is in conflict. It is simply the means adopted by the legislature to carry into effect and continue the principal purpose of the act that no more than two of the commissioners should at any time belong to the same political party. The latter provision being confessedly valid, I think the means provided to continue the condition thus created were also valid.

I am unable to find in the Constitution any provision which renders void that portion of the act which provides that in case of a failure by the board of police commissioners to appoint the chief of police, the senior captain should act as such until the board should make an appointment. The purpose of this provision clearly was to provide for an emergency that might arise, and thus prevent the city from being without a chief of police until such appointment should be made.

Its effect was to confer temporarily upon a city officer added powers and impose upon him other duties which he would be required to discharge while the emergency continued. That the legislature possessed the power to amend the charter of the city of Albany so as to provide that in such an emergency one of its officers should discharge other and added

duties, I have no doubt. The authority of the legislature over such a municipality has already been considered; and I think it possessed the power to enact the provision under consideration, and that it is valid.

Nor do I think the provisions of section four of the act, which provide that no person shall be eligible to appointment as patrolman of the city who is over the age of forty years, violate the provision of section nine of article five of the Constitution, which declares: "Appointments and promotions in the civil service of the state, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive; provided, however, that honorably-discharged soldiers and sailors from the army and navy of the United States in the late civil war, who are citizens and residents of this state, shall be entitled to preference in appointment and promotion, without regard to their standing on any list from which such appointment or promotion may be made." That provision of the statute would seem to be a proper and useful one, as it is manifest that the office of patrolman is one which requires a degree of activity, vigor and endurance that does not usually exist in older persons. Moreover, the value of the services of a patrolman increases by experience, and, hence, the necessity of appointing at the outset young men to that position. The provision seems to be one that is not only proper but necessary to secure the best service in that department. It is found in many of the charters of the cities in this state, and is not, I think, in conflict with the provision of the Constitution referred to. The purpose of that provision was to secure appointments according to merit and fitness, and not to interfere with proper provisions of statute in regard to the qualifications that a particular officer should be required to possess. Notwithstanding that provision, I think the legislature still has the power, when necessary or proper, to provide the qualifications, such as age, residence, business and profession, which

a person shall possess. to entitle him to be appointed to a particular office.

The only remaining ground upon which it is claimed that this statute is invalid is that it does not strictly comply with the provisions of section two of article twelve of the Constitution which require the insertion after the title of such an act of the words: "Passed without the acceptance of the city." The precise words required by the Constitution were not inserted after the title in this act, but the words "not accepted by the city" were inserted and were manifestly intended to be in compliance with the requirements of the Constitution. While the language first stated is in terms required, still I do not think that the omission to use the precise words mentioned makes a statute invalid when, as in this case, words which are equivalent to those provided for are used. Such a construction of this provision would be too narrow and technical. The words used were within the spirit of the provision, although not within its letter, and were, I think, sufficient.

These considerations lead me irresistibly to the conclusion that the judgment in this action should be reversed, and, hence, I am unable to concur in the result reached by a majority of the court.

GRAY and O'BRIEN, JJ., read for affirmance.

ANDREWS, Ch. J., and VANN, J., concur in that result on the grounds:

1st. That a minority of the common council is not a city authority within the meaning of section 2 of article 10 of the Constitution.

2d. That the clause prescribing the qualification of the police commissioners is so connected with the purpose of the act and the object in view that it cannot be said that it was not an essential part of the scheme of the act and may, therefore, be rejected, leaving the remainder of the act to stand.

BARTLETT and MARTIN, JJ. (with whom HAIGHT, J., concurs), read for reversal.

Judgment affirmed.